## WM. HERTLE and MARY ANN, his wife, vs. AUGUST J. SCHWARTZE and SAM'L McDONALD.

G. purchased property in 1809, for $2000, giving his notes for the purchase
money, with S. and D. as sureties, and receiving a bond of conveyance
from the vendor. The sureties paid the notes, and, in 1811, the vendor
conveyed the land to them absolutely by a deed, reciting, that G. had, in
1809, assigned the bond of conveyance to them. In 1812, S. and D. sold
to W. for $4800, and gave a bond of conveyance, and the purchase money
having been paid the year following, they afterwards, in 1821, conveyed
the property to W. by deed. G. died in 1810, and his widow administered
on his estate. In 1845, the daughter, and sole surviving heir at law of G.,
who, at her father's death, was an infant and did not attain age until 1831,
filed a bill against S. and D., to recover the difference between the $2000
originally paid by them, and the sum for which they sold to W., claiming
that the assignment of the bond of conveyance by G. was simply by way
of indemnity for their suretyship. HELD, that limitations was a conclusive
bar to the claim.

The legal representatives of G. could have recovered this money, if any had
been due, as personalty, by an action at law, either for money had and

received, or a special action on the case, and limitations is a clear bar to the recovery in this suit.

It is doubtful whether equity has jurisdiction in this case, the demand being in the nature of a claim for a specific sum of money, which, upon an implied contract, S. and D. held for the use of G.

While equity exercises exclusive jurisdiction in most matters of trust and confidence, yet there are other *quasi* trusts cognizable in a court of law, such as deposits, bailments, and the implied contract of accounting for money received to another's use.

In all cases of concurrent jurisdiction at law and in equity, the statute of limitations is equally obligatory in each court.

The case of *Dugan vs. Gittings*, 3 *Gill*, 161, contains the true rule in regard to limitations in equity, and the case of *Lamar vs. Jones*, 3 *H. & McH.*, 328, may be regarded as overruled.

APPEAL from the Court of Chancery.

The bill in this case was filed by the appellants, on the 30th of August 1845, and alleges, that Wm. Gibbons, the father of the female complainant, in November 1809, purchased of one Robert Corry a lot of ground in the city of Baltimore, for which he gave his two promissory notes, each for $1000, dated the 25th of that month, and payable, respectively, in six and twelve months from date, and took from Corry a bond of conveyance for the property, a copy of which is exhibited with the bill. That Schwartze and Wm. McDonald, (the testator of the appellee, McDonald,) became the sureties of Gibbons by endorsing his said notes for the purchase money, and Gibbons, for the purpose of indemnifying them as such sureties, assigned to them, or to Schwartze for their joint security, the said bond of conveyance, as will appear by certain endorsements thereon. That Gibbons died before the maturity of the notes, leaving as his only children and heirs at law the female complainant and two infant male children, who have long since died intestate and without issue, so that said complainant is now his only surviving heir at law.

The bill then charges, that at the time of the assignment of the bond of conveyance to Schwartze and McDonald, it was agreed by and between them and Gibbons, that if the latter should make default in the payment of said notes, his·

sureties should take and hold possession of the property, and out of the rents and profits thereof, pay themselves for all outlay and expense they might incur for their suretyship, and hold and occupy it for the benefit of Gibbons and his heirs, after such payment and indemnification. That by reason of the death or inability of Gibbons to pay the notes, Schwartze and McDonald were compelled to pay them, in consideration whereof and of the assignment aforesaid, Corry, on the 15th of March 1811, conveyed the property to them as tenants in common, and that they have from the rents and profits been fully indemnified, so that the purposes of the assignment to them having been accomplished, they are now to be regarded, and did in fact become trustees for the benefit of the heirs of Gibbons; that nevertheless, on or about the 13th January 1812, they entered into a bond of conveyance to one William West, to convey to him said property for the sum of $4800, payable one-third in cash, and the residue in six and twelve months, and received said purchase money in full when due, and long afterwards, on the 31st of January 1821, conveyed the property to said West, as appears by copies of the bond and conveyance filed with the bill. That by reason of these circumstances, the female complainant became entitled to receive from Schwartze and McDonald said sum of $4800, which, notwithstanding, they have refused to pay, and the bill then prays that the defendants may be compelled to account and pay, and for general relief.

The answer of Schwartze admits the purchase by Gibbons, and that the complainant's exhibit is a copy of said contract of purchase or bond of conveyance. That respondent and William McDonald lent to Gibbons the use of their names to enable him to purchase the property, and that the bond of conveyance was assigned to them by way of security to indemnify them against loss. He insists that during the life of Gibbons and after his death, he, (respondent,) paid large sums of money for debts contracted by him for the purchase of the property, and for other purposes. He denies that the property or the bond from Corry was assigned to them or

either of them, for the purpose of paying the debts of Gibbons from the rents and profits, and avers that Gibbons occupied the premises until his death, and that his widow and children resided thereon from the time of his death until the sale thereof. He admits that Corry conveyed the property to them, and the sale and conveyance to West, as charged, but insists, that he advanced and paid more money for Gibbons and his family than he received from West, and, in addition, sets up the defences:—1st, that respondent had petitioned and received his discharge under the insolvent laws in 1819; and 2nd, the statute of limitations.

The answer of the executor of McDonald admits the deed of the 15th of March 1811, from Corry to Schwartze and his testator, and their bond of conveyance of the 13th of January 1812, and their deed of the 31st of January 1821, to West, but of the payment of the purchase money respondent knows nothing, except that derived from the recital in the deed to West. He says he has no personal knowledge of the various matters alleged in the bill, showing the interest of the complainant in the property, nor has he been able, after diligent search among the books and papers of his testator, to find any such information, and therefore puts the complainants to the proof of their bill in this respect. His answer further states, that Gibbons dying in 1810, his wife, in that year, administered on his estate, and settled up the same, and the final account, settled in July 1813, is exhibited with the answer. That the widow and family of Gibbons have resided in Baltimore since the latter's death, and that the widow died only the year before the filing of this bill, and that during all that period no such claim was ever set up or made until July 1845, when a letter from complainants' solicitors was addressed to respondent's testator, urging the settlement of the claim. That during all this period the said widow and family were in straitened circumstances, such as were calculated to urge the prosecution of any such claim, if well founded, against his testator, who was well known as a man of ample means and of a high reputation for integrity, (which facts

47      v.3

were admitted,) but at the receipt of the letter was of advanced age, unable to attend to business, and died shortly thereafter. That respondent could find no recognition of this claim by his testator among all his books and papers, and under these circumstances, the lapse of more than thirty-five years since the death of Gibbons, and more than thirty years since West's purchase and payment for the property, the silence of all parties as to the claim until July 1845, respondent is persuaded there can be no just foundation for the claim, and pleads and relies upon the statute of frauds and perjuries, lapse of time and the statute of limitations, as bars to the relief prayed.

The proof taken consists of:—1st, the testimony of Roschen, a witness examined on the part of the defendant, Schwartze, proving that Gibbons bought the property in question, and that Schwartze and McDonald endorsed his notes, which were discounted at bank, and the money thus raised applied to the payment of the purchase money; that these notes were ultimately paid out of the proceeds of the sale of the property; that Gibbons took possession as soon as the purchase was made, and his family remained in the house up to and until some time after the sale to West; that Mrs. Gibbons claimed dower in said property, and Schwartze advanced her money on account of her dower interest to more than its value, and that after the property was sold and every thing had been settled, Schwartze repeatedly loaned Mrs. Gibbons money, which she returned to him. On cross-examination this witness stated, that Gibbons assigned his interest in the property to S. and McD., by way of security against loss on their part for their friendly assistance in the matter.

2nd. Proof on the part of complainants that Gibbons died in 1810, and that the complainant, Mrs. Hertle, is his only surviving heir at law, and was born in 1810, about the time of her father's death.

3rd. Exhibit A, purporting to be a copy of the bond of conveyance from Corry to Gibbons, dated 25th of September 1809, describing the property purchased, and reciting the

giving by Gibbons of his promissory notes for the purchase money, ($2000,) as charged in the bill. Upon the back of this paper was the following assignment, dated the 15th of November 1809, and purporting to be signed and sealed by Gibbons, and witnessed by Samuel Moale: "Whereas August Jacob Schwartze has become security in the notes mentioned in the aforegoing bond of conveyance on behalf of said William Gibbons, by endorsing said notes, now I, the said William Gibbons, do hereby grant and assign the said bond of conveyance, and the said property therein contained, unto the said A. J. Schwartze, his heirs and assigns, as an indemnity to him by reason of his becoming security as aforesaid." Also the following note, dated 26th of December 1810, from Schwartze, (proved to be in his handwriting,) to N. Brice, Esq.: "Sir, herewith I have the honor of handing you the desired copy of conveyances of the property bought by William Gibbons. The widow has it not in her power to pay the note I gave you, and which falls due 1st January next. You promised, if possible, to extend the payment to June next. You would confer an obligation by doing so; will you be pleased to inform me whether you can do it." Also the following endorsements made by said Brice: "1. Deed to A. J. Schwartze and William McDonald, as tenants in common." "2. Recite in the deed that William Gibbons assigned his bond of conveyance to Schwartze and McDonald." It was also proved by said Brice, in relation to this paper, that he, as attorney for Corry, sold the property to Gibbons, and gave him a bond of conveyance for it, of which he believes exhibit A to be a true copy, though he cannot tell in whose handwriting it is; that he knows nothing of the assignment by Gibbons, further than it appears on the paper which came to his possession from Schwartze, who wrote the note thereon above referred to; that this paper had been in his possession since 1810 until 1845, when he loaned it to Mr. Glenn; that the endorsements on the back, marked 1 and 2, were made by him with a view to the preparation of a deed of the property, which was prepared in his office under his directions,

and was made to Schwartze and McDonald, as tenants in common. That after his death Gibbons' widow was in needy circumstances, and made efforts to pay the notes due for the property, and he, as Corry's attorney, gave her an extension of time, but she was ultimately unable to meet them herself, and the deed was made as above stated.

4th. The deed of the property from Corry to Schwartze and McDonald, dated the 15th of March 1811, which contains this recital: "Whereas the said Robert Corry did, on or about the 25th of September, in the year 1809, make his bond of conveyance to a certain William Gibbons, conditioned to convey to the said Gibbons a certain lot of ground in the city of Baltimore, on payment of the purchase money therefor; and whereas the said William Gibbons did, on or about the 15th of November 1809, grant and assign the said bond of conveyance, and the property therein contained, to the said August Jacob Schwartze and William McDonald. Now this indenture witnesseth," &c. It then, in consideration of the premises, and of "the sum of $2000 paid by Schwartze and McDonald," conveys the property to them absolutely as tenants in common.

5th. The bond of conveyance and deed of the property from Schwartze and McDonald to West, the former dated the 13th of January 1812, and the latter 31st of January 1821, conveying the property to West, in consideration of the sum of $4800 paid by him.

The defendant, McDonald, excepted:—1st, to the testimony of Roschen, as inadmissible as against him to prove any agreement of his testator to become the security of Gibbons, or that his testator took the deed from Corry as an indemnity for any such suretyship, or upon any condition or agreement not stated in said deed. 2nd, to the admissibility of exhibit A, as it is shown to be a copy and not the original, and is inadmissible to prove any assignment different from that stated in the deed from Corry. Also to the letter of Schwartze on said exhibit, as inadmissible against him for any purpose, and also to the endorsements thereon made by Brice,

as they are not shown to have been made by the direction or with the knowledge of defendant's testator.

McDonald also excepted to the averments of the bill as insufficient to entitle the complainants to relief, on the ground of any alleged fraud or mistake in the obtention or execution of the deed from Corry, of March 1811, or of any fraud on the part of McDonald, and to all the evidence relied upon to establish any such fraud or mistake, as not relevant to the issue and inadmissible for the want of such allegations.

There was no attempt to prove the agreement charged in the bill, to wit, that Schwartze and McDonald should keep possession of the property, in case of default by Gibbons, until they were reimbursed from the rents and profits for the money which, as his sureties, they might be compelled to pay.

The chancellor, (JOHNSON,) decreed that the bill should be dismissed, and delivered an opinion, reported in 2 *Md. Ch. Decisions*, 128, from which the above statement of the case is in part taken.   The complainants appealed.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*S. Teackle Wallis* for the appellants.

1st. The complainant's equities are made out so as to entitle them to relief, without recourse to the evidence objected to.   The evidence, to which there are no exceptions, shows, that the appellees had nothing to do with the original purchase from Corry.   The deed to the appellees recites, that the bond of conveyance was to Gibbons, in 1809, and the assignment of it to them within a short time after he obtained it.   Gibbons remained in possession; and his wife, after his death, was looked to as the party to pay the notes, and was so treated by the attorney for Corry.   Our view then is, that there was an equity of redemption in Gibbons at the time of his death, which descended to his heirs at law.

2nd. The testimony excepted to is admissible.   The exceptions are based on two grounds:—1st. That the assign-

ment on exhibit A cannot affect McDonald; and 2nd. That the parol proof of Roschen is inadmissible.

The deed was made to Schwartze and McDonald, as tenants in common, accepted by McDonald, who derives his interest in the property under it. Now can one grantee, in a deed prepared under the instructions of his co-tenant, take under the deed and yet deny the agency of his co-tenant, and shirk the responsibility involved in the agency? We contend not, and that this paper, exhibit A, therefore furnishes written proof that the assignment was made for indemnity and nothing else. But whether this be treated as an absolute assignment with a secret trust, or as an indemnity by way of mortgage, parol evidence is admissible to explain the transaction and show the trust in the one case or the mortgage in the other. *First.* Suppose the evidence be regarded as proof to establish a resulting trust? It is well settled, that no matter what the form of the conveyance may be, the trust will result in favor of the party advancing the purchase money, and this may be proved by parol. *Adams' Doctrine of Equity*, 34, 35, (68 *Law Lib.*, 76.) *White's Leading Cases*, 65 *Law Lib.*, 175, 180, 181. All parol proof throwing light upon the subject ought to be admitted. 6 *Wheat.*, 481, *Prevost vs. Gratz.* The doctrine that the *purchase money* must be paid by the party in favor of whom the trust results, does not require the actual payment of money in gold and silver; it merely means that the party must furnish *the consideration* upon which the property was bought. Where a party acts in a fiduciary capacity with property, the benefit of his acts results to the *cestui que trusts* and not to the trustee. 2 *Peere Wms.*, 511, *Rakestraw vs. Brewer.* 2 *Johns. Ch. Rep.*, 30, *Holridge vs. Gillespie.* 2 *Vernon*, 84, *Manlove vs. Ball.* 65 *Law Lib.*, 50, 51, 54, 55. *Secondly.* Suppose the conveyance to be absolute on its face, parol proof is admissible to show it to be a mortgage. 2 *White and Tudor's Eq. Cases*, 71 *Law Lib.*, 563, 564. 6 *G. & J.*, 281, *Dougherty vs. McColgan.* 12 *Howard*, 147, 148, *Russell vs. Southard.* The last case cited shows, that the allegations of the bill are sufficient.

3rd. Whether the transaction be regarded as an express or constructive trust or a fraud, it is not barred by limitations or lapse of time, in view of the disabilities of Mrs. Hertle, the appellant's wife. The clause of the statute as to lapse of time after disability *removed*, has not been adopted by courts of equity and the party has twenty years after disability removed. 3 *H. & McH.*, 328, *Lamar vs. Jones*. 2 *H. & G.*, 331, *Oehler vs. Walker*. Equity will never enforce limitations in furtherance of injustice. 2 *Story's Eq.*, sec. 1521. 65 *Law Lib.*, 145. Again, delay will not purge a fraud. 2 *Eden*, 280, *Alden vs. Gregory*. 4 *Howard*, 560, *Michoud vs. Girod*. 12 *Howard*, 155, *Russell vs. Southard*. *Hill on Trustees*, 263, '4, '5. 3 *Sumner*, 486, *Baker vs. Whiting*. Acquiescence must be proved by the party who sets up lapse of time as a defence. Lapse of time does not furnish an imperative rule, but is mere matter of evidence addressed to the equitable consideration of the court, and made subordinate to the justice of the case. 12 *Ves.*, 374, *Morse vs. Royal*. 1 *Littel*, 53, 59, *Reardon vs. Searcy*. 2 *Hawks*, 488, *Tate vs. Greenlee*. 2 *Gill*, 163, 170. 5 *Gill*, 358. 6 *Gill*, 440.

4th. If the averments of the bill do not meet the equities proven, the case should be remanded. 1 *Md. Rep.*, 327, *Thomas vs. Doub*. But *Schwartze* takes no exceptions, and the case is clearly made out against him by his own witness.

*J. V. L. McMahon* for the appellee, McDonald.

1st. As to the title to relief under the case made by the bill and the proof in the cause. The bill charges neither fraud or mistake in the execution of the deed from Corry, but its equity is founded solely on the allegation, that the appellees' title began by assignment to them, or to Schwartze for their joint benefit, by Gibbons of his bond of conveyance, to indemnify them for their suretyship for him on account of the purchase money, and upon the alleged agreement, that if Gibbons failed to pay the purchase money, they should take possession and secure themselves out of the rents and profits. Of this agreement there is no proof, and the utmost that can

be alleged to be shown by any or all of the proof is, that Gibbons had assigned to them his equitable interest in the property by way of mortgage, or as an indemnity for their alleged suretyship for him, and that under this they obtained the deed from Corry. Now it is maintained that this proof offered, is under the plea of the statute of frauds and the exceptions to the evidence, inadmissible for the purpose of proving that the parties took the deed from Corry upon any trust or agreement not manifested by said deed; that the exceptions of McDonald to the evidence were properly taken, and even if such evidence be admissible it fails to establish that McDonald took the deed from Córry under any such agreement with, or assignment from, Gibbons, as is alleged by the bill.

We are examining transactions after the lapse of more than thirty years before the filing of the bill, and after the death of the party. After such a lapse and death, fraud will not be imputed. 1 *Gill*, 302. The assignment is proven only by *Roschen* and exhibit A—this is the whole evidence in the case, and let us examine it:—1st. As to the medium of proof; and 2nd. As to the sufficiency of the fact after it is proved. 1st. Parol evidence of an assignment is but admissible; the term *assignment* imports a *written* assignment. The bond of conveyance is nothing but a copy, and you must first prove the execution of the original, and that it was lost before the copy is admissible. It is not proved in whose handwriting the instructions on the back were made, or that McDonald had any thing to do with them. We plead the statute of frauds and no exceptions are necessary. The statute requires a written declaration of a trust, signed by us, and parol evidence cannot be offered to prove such trust. 2nd. Are the facts admissible for the purpose for which they were offered? They are clearly not admissible under the statute to prove an actual *trust*. But it is said by the appellants, they prove a resulting trust; how so? To do this they must show that the property was theirs, this they have not done. Such a resulting trust must be one that results from

the *payment of the purchase money at the time.* 4 *H. & J.*, 556. 65 *Law Lib.*, 176, 177. 2 *Johns. Ch. Rep.*, 405, 409. The appellees paid the money and took the deed in their own name, and the fact that they subsequently sold the property and reimbursed themselves does not create a resulting trust. Again, it is not admissible to prove a mortgage. 2 *Md. Ch. Decisions*, 131, 132. 2 *Md. Rep.*, 35, 36, *McEldery vs. Shipley.* Fraud or mistake must be alleged before the deed can be attacked. 6 *H. & J.*, 25, *Wesley vs. Thomas.* 7 *Howard*, 829, 830. But the assignment was to Schwartze alone, and by it no one but he would have a right to indemnity; and therefore, supposing the evidence all in, it does not prove the case made by the bill. But the evidence is excepted to and it is clearly inadmissible. 1 *Gill*, 285, 302. 5 *Gill*, 288. The deed recites an assignment to the two without any reference to indemnity at all—they offer it in evidence and it does not lie in their mouth to say that there is no such assignment.

2nd. As to the bar to relief under the defence of laches and the statute of limitations: By reference to the bill and proofs it will be seen, that the claim, if there ever was any, began in 1813; that Mrs. Hertle, who was then not quite three years old, came of age in 1831, and this bill was filed in 1845, more than ten years, therefore, after the disability of infancy had ceased. Under these facts it is maintained, that even if it were conceded that the defendants became trustees by operation of law, or constructive trustees for the complainant, as to the balance of the purchase money received from West in 1813, still limitations and laches are a bar to the claim and a clear bar to relief, whether the alleged claim be regarded as a claim to *realty* or a claim to *personalty ;* but that in fact it is a claim to *personalty*, arising, if at all, as soon as the purchase money was fully received, and could only, as a claim to personalty, be prosecuted or recovered by the husband, as *survivor* of his wife, and as such, was barred long before the institution of this suit.

There is no allegation in the bill of either demand or igno-

rance of rights. There must be due diligence and activity in asserting rights; mere ignorance of rights will not do, it must be ignorance caused by the fraud of the other party. Infancy is the sole excuse offered. But here Mrs. Hertle takes but a part of the title. The sons, John and William, died in 1825, and at the age of twenty-five years; and with regard to their rights there can be no such thing as successive disabilities. She has no protection then as to the rights of the sons. 6 *East.*, 81. 3 *Johns. Ch. Rep.*, 136, 138. 5 *Cowen*, 101. *Adams on Ejectment*, 58.

But this is a proceeding to recover personalty, the husband is prosecuting the claim, it is a claim then for money. In such a case equity *obeys* the statute, not follows it by analogy. But a court of equity generally adopts the time in *analogy* to the time adopted by law. 2 *Story's Eq.*, secs. 1520, 1520, (*a*,) and notes. *Story's Eq. Pl.*, sec. 757. 7 *Howard*, 258. 8 *Howard*, 221, 222. 1 *Howard*, 193, 194. Constructive trusts are barred as well as any other. 10 *Peters*, 223. *Angel on Limitations*, 508. It is not true that delay, even in cases of fraud, will not be a good defence; the doctrine is only that where fraud is concealed, it will, for a time, prevent the running of limitations. 2 *Md. Ch. Decisions*, 390, 391. 2 *Potter*, 73. 7 *Howard*, 829. 4 *Howard*, 501. But this transaction can, at best, be made nothing more or better than a mortgage, and even in case of an express mortgage it would have been barred. 3 *Johns. Ch. Rep.*, 142 *to* 144. 3 *Kent's Com.*, 187. 72 *Law Lib.*, 425. 18 *Law Lib.*, 234. *Coote on Mortgages.* The statute is adopted by courts of equity with all its savings and clauses, and it would be a most extraordinary state of things if it were not so; for if the statute be adopted without its savings, the latter would be killed, and infants, *feme coverts*, and all would be barred. The case of *Lamar vs. Jones*, 3 *H. & McH.*, 328, is the only case that denies this doctrine, and it cannot be law. But the very question was decided in the case of *Dugan vs. Gittings*, 3 *Gill*, 139, 160, where the court cite with approbation the case of *Demarest vs. Winkoop*, 3 *Johns. Ch. Rep.*, 129,

which expressly repudiates the case of *Lamar vs. Jones.* If the transaction be regarded as a mortgage, it would, therefore, have been clearly barred.

But this is a claim for personalty, and from analogy, of a bar at law, the same time will be adopted in equity. 4 *Cowen,* 718, 742. An action would have lain for the money the moment it was received by Schwartze and McDonald, and limitations began to run from that time. 15 *Pick.,* 500, 504, 505. 16 *Pet.,* 455, 487, 494. 3 *G. & J.,* 395, 397. 1 *Gill,* 234, 248. 7 *Gill,* 77. 1 *Md. Ch. Decisions,* 53, 56. 3 *Bland,* 498. 4 *Paige,* 197. 9 *Pet.,* 415, 416. 3 *Cowen's Philips,* 819, 820.

*Thos. G. Pratt* for the appellant in reply.

*Gibbons* bought the lot for a stipulated price, gave the appellees as sureties on his notes, and assigned the bond of conveyance to them for their security; he then died before the maturity of the notes, and the sureties took the deed to themselves, and afterwards sold the property to West for $4800. This is the case made by the bill, and now the question is, have these equities been established by the answers or proofs in the cause?

As to Schwartze the statue of frauds is of no avail. He neither pleads nor relies upon it, and cannot, therefore, take advantage of it. 1 *Bland,* 248. 5 *H. & J.,* 383, *Jones vs. Slueby.* He took no exceptions to the testimony below, and as to him no notice will be taken of such exceptions here. *Act of* 1832, *ch.* 302. The chancellor may look to the whole case as made by the proof, to see whether the plaintiff is entitled to recover. 1 *Md. Rep.,* 327, *Doub vs. Thomas.* Schwartze's answer admits the equities of the bill, but besides this we have the assignment on the back of the bond of conveyance to him, to secure the notes mentioned in it, and his letter to Judge Brice, asking him to give further time to the family of Gibbons to pay the notes. From this it necessarily results, that by the sale of the property for $4800, he became trustee for the family of Gibbons, for the

difference between this sum and the purchase money, and a court of equity will hold him responsible for it. 2 *Story's Eq.*, secs. 1196, *(a,)* and authorities there cited. There was, therefore, clearly a resulting trust in favor of Gibbons, for the difference between the purchase money of the property and what it sold for.

We do not claim a trust under the deed from Corry, but under the assignment of the bond to Schwartze and McDonald, as sureties. Our claim is independent of the deed, which is absolute on its face. Because our assignees choose to take an absolute deed to themselves, does not preclude us from claiming under the original assignment. We could not allege fraud as against the deed; they had the right to take the deed, and the fraud depends upon the design of the parties to it. If they designed to pay over the difference, it was good; they had the right to sell and convey, and it only becomes fraudulent upon their design not to pay us over the balance, after taking out the $2000 purchase money.

Schwartze relies upon payment and his discharge under the insolvent laws. Of neither of these defences has he offered any evidence whatever.

McDonald excepts to the averments, but the bill is not framed on the hypothesis that the parties designed to commit a fraud. The only fraud, if any exists, is in the use made of the money arising from the sale. This is entirely outside of the deed. If, after getting $2000 of our money, they intended to put it into their pockets, this was a fraud. But he has also excepted to the admissibility of the evidence. These exceptions are all based on the proposition, that parol evidence is inadmissible to contradict the deed from Corry. With this deed, I have already said, we have nothing to do. Gibbons was not a party to it; the complainant was not a party to it; she was not then born, and we neither claim by, through, or under it, and yet the bold proposition is advanced, that a deed between entire strangers, which happens to set out, in its recitals, an absolute assignment, precludes us from showing that it was conditional and not absolute. As be-

tween strangers to a deed, you may offer parol testimony as to any facts which are recited in the deed. 3 *Starkie's Ev.*, 1052, *(Ed. of* 1830.*)*

The defence that no entries of this transaction are to be found in the books of McDonald, and he is, therefore, presumed to have paid the claim, if any existed, is of no avail. It is admitted that he endorsed the notes, took the deed and received the money, yet none of these transactions appear on his books. But in fact the proof shows that he never paid it, for Gibbons died before McDonald's liability to pay accrued, and the orphans court accounts show that it was not paid to his representatives. A purchaser with knowledge becomes trustee for the vendor. 3 *Bland*, 551. Schwartze was our trustee, and if the recital in the deed was made by him, McDonald was our trustee also, and taking the deed he takes it with the same equities. 6 *Paige*, 305. A deed will be prevented by equity from being fraudulently used, though not originally obtained by fraud. 2 *Alabama Rep.*, 624.

But McDonald pleads the statute of frauds. The assignment is in writing and the deed is in writing, and this is a sufficient compliance with the statute. 2 *Story's Eq.*, 1196, *(a.)* But it is said the assignment is not the best evidence, being but a copy. Where could the original be? doubtless in Corry's possession, because he would not have given the conveyance without taking back the bond of conveyance. This was then the best evidence capable of being adduced. But again, the statute is not applicable, because it is an implied trust. 2 *Story's Eq.*, secs. 1196, *et seq. Jeremy's Eq.*, 89.

As to limitations: The statute is not a bar, because:—1st. This is a trust. 3 *G. & J.*, 389. 1 *G. & J.*, 450. 4 *H. & J.*, 393, 430. As between trustee and *cestui que trust*, the trust subsists until the latter is informed that it is ended; so long as the trustees hold the fund it is a subsisting trust. They can only get rid of it by showing that we knew of its non-existence. Limitations never run against a trust, nor until the *cestui que trust* has knowledge of the repudiation of

the trust. 3 *Sumner's Rep.*, 486. 4 *H. & J.*, 430. 2nd. The original possession of the property by the appellees was with our assent, and limitations did not begin to run until they gave notice that they intended to hold adversely. 6 *G. & J.*, 80. 2 *G. & J.*, 173. 3rd. We cannot, as to this point, be looked upon in a more unfavorable light than as mortgagees. 6 *G. & J.*, 281, *Dougherty vs. McColgen.* The statute does not apply to a mortgage at law, and whether it is adopted by analogy in a court of equity, must depend upon the peculiar circumstances of each case. If it be clearly shown that the money has not been paid, limitations will not run. 11 *G. & J.*, 229, *Magruder vs. Peter.* But it is said we must have brought suit within ten years after disability removed. The Court of Appeals have said otherwise in the case of *Lamar vs. Jones*, 3 *H. & McH.*, 328, which case is affirmed by that of *Magruder vs. Peter*, 11 *G. & J.*, 229. Limitations never begin to run, until there is a right to make demand and bring the suit, vested in some one. 7 *H. & J.*, 17. 1 *H. & J.*, 33. 7 *H. & J.*, 14. Here it was not vested until 1831.

MASON, J., delivered the opinion of this court.

The facts and circumstances of this case are fully and explicitly set out by the chancellor in his opinion. We have examined that opinion attentively, and while we do not deem it necessary to affirm all its legal propositions, yet we can find no reasons for reversing the decree which is based upon it.

We concur with the chancellor, that the plea of limitations is a conclusive bar to a recovery in the present case.

In addition to his views we will remark, that there can be no valid reason assigned why the legal representatives of Gibbons could not have recovered this money, if any had been due, from Schwartze and McDonald, as personalty, in an action at law. If this be true, clearly limitations would be a bar to a recovery, in the present suit, at this late day.

If the title of Schwartze and McDonald was not an absolute title to the property conveyed to them by Corry, they

could only have held it in the character of mortgagees, to secure the amount they had paid for Gibbons on his original purchase. But this is not a bill for pursuing mortgaged premises, which could only be reached through a court of equity. Long before the institution of this suit the premises had been converted into money, and the excess, which is now claimed over and above the debt due the defendants, and for the recovery of which these proceedings have been instituted, could, without difficulty, have been reached by an action at law, either for money had and received, or a special action on the case. 11 *Gill and John.*, 443, *Oliver vs. Palmer and Hamilton.*

Indeed, under the authority just cited, and more especially under the case of *Adair vs. Winchester*, 7 *Gill and John.*, 118, it is at least doubtful whether a court of equity would have any jurisdiction in a case like the present. The demand here is in the nature of a claim for a *specific sum of money*, which, upon an implied contract, the defendants held for the use of Gibbons. While the court, in the case last cited, say, that a court of equity exercises exclusive jurisdiction in most matters of trust and confidence, yet there are other *quasi* trusts which are cognizable in a court of law, as for example, "deposites, and all manner of bailments, and especially that implied contract so highly beneficial and useful, of having undertook to account for money received to another's use, which is the ground of an action on the case."

And it is clear, that in all cases of concurrent jurisdiction at law and in equity, (supposing this to be such a case,) the statute of limitations is equally obligatory in each court. *Dugan vs. Gittings*, 3 *Gill*, 161. And for the general rule in regard to limitations in equity, we refer especially to this case as containing the true doctrine upon the subject. In the case of *Dugan vs. Gittings*, our Court of Appeals refer approvingly to the case of *Demarest vs. Winkoop*, 3 *John. Ch. Rep.*, 129, and adopts the doctrines on this subject therein announced. Chancellor Kent, in that case, repudiates the case of *Lamar vs. Jones*, 3 *H. & McH.*, 328, and, as the principles of *Dema-*

*rest vs. Winkoop*, have been adopted in *Dugan vs. Gittings*, we may regard the case of *Lamar vs. Jones*, as overruled by this court.

*Decree affirmed.*