# WILFRED C. DOWNS

*vs.*

## JOSEPH R. GUNTHER, Receiver.

*Corporations: assets; leases.*

W. C. Downs and his father, for many years had leased a certain building, and had carried on business there as "Downs & Co."; upon the death of the father, the son occupied the building and carried on the business under the firm name; parts of the building, not used by the firm, were sublet to other tenants, and the subrents collected by W. C. Downs, individually; after the death of the elder Downs the business of Downs & Co. was incorporated; the corporation became insolvent and a receiver was appointed; the receiver filed a petition to enjoin W. C. Downs from interfering with the building, and especially from collecting any of the rents, and to compel him to assign the lease to the receiver; on an appeal from a decree granting the relief, it was: *Held,* that there was no evidence that the leased property formed any part of the assets of the corporation, and that the petition should have been dismissed. p. 632

*Decided May 17th, 1916.*

Appeal from the Circuit Court of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Francis I. Mooney,* for the appellant.

*Joseph R. Gunther,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

On the 12th of December, 1910, F. C. Latrobe and others, trustees, leased to Wilfred C. Downs the property or premises at the northeast corner of Charles and Camden streets in Baltimore City, for the term of five years, beginning on the first of January, 1911, at $1,380.00 per year, payable in monthly installments of $115.00. At the date of the lease, and for a number of years prior thereto, the lessee had been engaged in business in said building under the name of Downs & Company, and the lease of 1910 was a renewal of a former lease. Downs & Company only occupied a part of the building, and the remaining portions of the building were sub-let by Wilfred C. Downs, the lessee. In 1912 Wilfred C. Downs and others formed a corporation named "Downs & Company, Incorporated," and the corporation so formed continued in the same building the business formerly conducted by Downs & Company until sometime in 1914 or 1915 when Downs & Company, Incorporated, became insolvent and a receiver was appointed to take charge of its assets, &c.

On the 4th of November, 1915, Joseph R. Gunther, the receiver, filed a petition in the Circuit Court of Baltimore City alleging that after the incorporation of Downs & Company, Incorporated, the corporation occupied that part of the premises leased to Wilfred C. Downs formerly occupied by Downs & Company, and paid the rent due under the lease; that Wilfred C. Downs, as the manager and president of the corporation, rented other parts of the building to the several tenants mentioned; that Downs had notified these sub-tenants not to pay rent to the petitioner and that in consequence of such notice the sub-tenants had refused to pay him the rent. The petition prayed that Downs be required to assign the lease for the premises to the petitioner, and that he be enjoined from interfering with the petitioner in the collection of the rents from the sub-tenants and from "prosecuting any proceedings against any sub-tenants of said premises for the payment of rent therefor." The Court passed an order requiring Wilfred C. Downs to show cause why he should not be required to assign the lease as prayed, and enjoining him, until the further order of the Court, from interfering with the receiver in the collection of the rents from the sub-tenants. Wilfred C. Downs answered the petition denying that the rent for the premises had been paid by Downs & Company, Incorporated, or that he, as manager and president of the corporation, had rented portions of the building to the sub-tenants mentioned in the petition, and alleging "that he and his father before him had occupied and leased the premises in question for almost forty years; that after his father died the premises were leased to him in his individual capacity"; that he had always exercised his rights as lessee under the lease, and that a portion of the premises "was sub-let by him" as lessee and not as manager or president of the corporation; that it was never intended that the lease for the premises should be assigned to the corporation; that the lease was always his "individual property"; that he and the landlord always treated it as such, and that there was nothing

"on the books of the corporation" to show that the lease was
an asset of the corporation.

Testimony was produced by the receiver and the respond-
ent, and after a hearing the Court passed the order from
which this appeal was taken, requiring the respondent to as-
sign the lease and surrender possession of the premises in
question to the petitioner, and enjoining him from interfer-
ing with the receiver in the collection of the rents, &c.

After a careful examination of the evidence we are unable
to concur in the conclusion of the learned Court below.   It
fails in our judgment to establish the contention of the peti-
tioner that the lease in question and the rents due from the
sub-tenants belonged to and were a part of the assets of the
corporation of which he was appointed receiver.   Downs and
his father had been lessees of the property for a number of
years.   After his father's death Wilfred C. Downs continued
the business in the property under the name of Downs &
Company, and was conducting the business under that name
at the time the lease of 1910 was executed.   About a year
after the execution of the lease Wilfred C. Downs had an
attack of typhoid fever, and he states that during his illness
his business "was closed up for about three months," and that
when he recovered his health he began the formation of the
company incorporated in 1912 under the name of Downs &
Company, Incorporated.   James W. Harvey, a real estate
agent, who was called as a witness by the petitioner, testified
that he had had charge of the property at the corner of
Charles and Camden streets for about twenty-five years; that
he had always collected the rent from the father of Wilfred
C. Downs and from Wilfred C. Downs as Downs & Com-
pany; that after the death of Wilfred C. Downs' father and
the lease to Wilfred C. Downs he continued to send the bills
to Downs & Company, and that after 1912 the rent was paid
by the check of Downs & Company, Incorporated.   He
stated, however, on cross-examination that just prior to the
formation of the corporation, Wilfred C. Downs and a Mr.
Dumler came to see him and told him that the corporation

was going to be formed and wanted him to assign, or consent to the assignment of the lease to Downs & Company, Incorporated, and that he positively refused to do so because he did not know anything about the financial responsibility of the company but did know, or believed, that Wilfred C. Downs was responsible.

The bookkeeper of Downs & Company, Incorporated, testified that the rent was paid by the check of Downs & Company, Incorporated, but that the rent for the portions of the building rented to sub-tenants was received by her "for Mr. Downs individually," and that sometimes she gave him credit for it, and sometimes she placed it to the credit of the corporation.

John E. Tennyson, who occupied a part of the building mentioned in the lease, testified that he rented it from Mr. Downs; that he generally paid the rent "in cash" to Mr. Downs, and that the check he gave, dated June 9th, 1915, for the rent, payable to Downs & Company was endorsed by W. C. Downs.

J. A. Newman, another witness produced by the petitioner, testified that he had occupied a part of the building on the corner of Camden and Charles streets for about five years, and that he had always paid the rent by check, and that before and after the incorporation of Downs & Company, Incorporated, his checks were drawn in favor of "Downs & Company."

John H. Dumler, a witness for the respondent, testified that in January, 1912, just before Downs & Company was incorporated, he went to see Mr. Harvey and asked him if he would consent to an assignment of the lease to Downs & Company, Incorporated, and that he "flatly refused," and said: "No, I will look to Wilfred C. Downs for the rent under the lease, and I will not consent to an assignment to anybody."

Wilfred C. Downs testified that he went with Mr. Dumler to see Mr. Harvey to get his consent to an assignment of the lease to Downs & Company, Incorporated, and that he re-

fused to permit it, and said to him, "you have been there and
your father has been there for thirty some odd years, and I
am looking to you."

The evidence we have referred to, which is practically all
of the evidence produced at the trial, shows conclusively that
the lease was not assigned by Wilfred C. Downs to the cor-
poration because of the refusal of the agent of the landlord,
in advance of the incorporation of the company, to recognize
the corporation as the lessee of the property, and entirely
fails to show any agreement or understanding between the
corporation and Wilfred C. Downs that the lease was to be
regarded as an asset of the corporation. It does not appear
by the books of the corporation, as explained by the book-
keeper, whether the rent reserved in the lease was paid by
the corporation, or was paid in part by the corporation and
in part out of the rent collected from the sub-tenants, which
she states she received for "Mr. Downs individually."

Under the circumstances disclosed by the evidence the re-
ceiver was not entitled to the relief prayed in his petition.

The doctrine announced in *German Aged People's Home*
v. *Hammerbacker,* 64 Md. 595, relied on by the appellee, ap-
plies to an attempt by one of the parties to an agreement to
fraudulently deprive the other party of its benefits. There
the Court said: "This agreement was of a distinctive char-
acter, and was looked to by both the contracting parties at
the time as essential to the security of their rights. To allow
either of the parties to evade its liability and get the advan-
tage of the other by resorting to such a fraudulent subterfuge
as that charged upon the defendant, would be against all
equity and conscience, and such as no well-adjusted system
of jurisprudence could tolerate. The authorities, we think,
fully warrant a Court of Equity in the exercise of its juris-
diction in such case, to enforce the production of the con-
tract fraudulently withheld, to the injury of the plaintiff,
or to enforce the due and proper execution of the contract,
if such execution be fraudulently and without justifiable ex-
cuse delayed, to the injury of the plaintiff." In the case

at bar there is not, as we have said, the slightest evidence of any agreement or understanding that the lease was to be assigned to the corporation, and in the absence of such an agreement or understanding Wilfred C. Downs was under no obligation to make the assignment. Even if we assume that he was the president or manager of the corporation (of which there is no proof), that fact would not justify the inference that he agreed to assign the lease to the company. To hold otherwise would render it unsafe for any owner or lessee of a building to sub-let any part of it to a corporation in which he was interested or of which he was an officer. There is no evidence to show that the respondent deprived the receiver of the reasonable and proper use of that part of the premises formerly occupied by the corporation, as to which it is reasonable to assume there was some understanding between him and the company, but the petitioner is demanding an assignment of the lease in order that he may collect rent for other parts of the building in regard to which he has failed to show any understanding or agreement with the lessee.

*Order reversed, with costs to the appellant, and petition dismissed.*