## BALTIMORE HUMANE IMPARTIAL SOCIETY & AGED WOMEN'S & AGED MEN'S HOMES *v.* GEORGE MARLEY.

[No. 90, October Term, 1928.]

*Decided January 25th, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Leigh Bonsal,* with whom were *Bonsal & Lee* on the brief, for the appellant.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

Marley, the appellee, sued in equity for cancellation and rescission of a contract he had made with the appellant, called in the contract the Home, to become an inmate and receive care during the remainder of his life, and for the re-delivery to him of a will he had made in favor of the Home, and money which he had transferred to it as required by his contract. There was a provision in the contract that within a probation period of six months either the Home or the inmate might terminate the contract without question, with a return to the inmate of the admission fee paid by him, less five dollars per week board for the length of his residence in the Home; and Marley, within six months of his admission, declared his election to terminate the contract and demanded a return of the money previously transferred. And this return having been refused by the Home, he filed his bill in equity. The Home in its answer set up the additional facts that Marley had entered the Home with false representations as to the amount of his money, and at first had transferred only a small portion of it, concealing the remainder, and so attempting to gain the benefit of charitable care from the Home and at the same time to preserve his own independent resources; and that later, upon discovery by the Home of the attempt, Marley acknowledged his mistake in making it, and made the full transfer required; but that in a few days he changed his mind and resorted to the provision for termination of the contract as a further means of keeping his money. A demurrer by Marley to this answer was sustained, and the Home appeals from that ruling.

In the argument the Home contends that, in the first place, the bill has shown no ground for resorting to equity for the relief sought; then that there was no obligation under the contract to return the money transferred, especially under the additional circumstances shown in the answer; and that it follows from these additional circumstances that if such a contract obligation might be found, Marley's attempted concealment and fraud on the Home would disentitle him to the aid of a court of equity because he would not come to it with clean hands.

The objection to the jurisdiction is based upon the general principle that the equity courts may be resorted to for cancellation or rescission of instruments only when some one of the peculiar grounds of equitable jurisdiction is involved or when there is for other reasons no adequate remedy at law for the relief needed, and based also upon the fact that an action for money had and received would be a complete remedy here for the return of money transferred to the Home if Marley is entitled to it. 2 *Story, Equity Jurisprudence* (14th Ed.), sec. 993; 2 *Pomeroy, Equity Jurisprudence,* sec. 914; collection of decisions in note 11 *L. R. A.* 68; *Lipson v. Evans,* 133 Md. 370, 376; *Hertle v. Schwarze,* 3 Md. 366, 383; *Wenstrom Motor Co. v. Purnell,* 75 Md. 113, 119; *Ranstead v. Allen,* 85 Md. 482; *Willson v. Williams,* 106 Md. 657, 663; *Coan v. Consol. Gas E. L. & P. Co.,* 126 Md. 506, 510. And it might be added, in support of the argument, that what Marley wants from the court in this case is not cancellation or rescission of his contract but performance of it in that part which provides for readjustment upon the exercise of the option to terminate it. *Levin v. Goodman,* 152 Md. 185; *Johnson v. Evans,* 8 Gill, 155. But he seeks the additional remedy of a re-delivery of the will which he executed in favor of the Home and put in the hands of its officers. It seems quite likely that this was done merely as a measure of extra precaution, without any substantial reason for believing that the inmate would leave property to pass under the will, but the court has no ground for adjudicating as a fact that there would be no

assets to pass, and for ignoring the instrument because of that supposed fact. We must treat it as a possibly effective instrument. And if a man in Marley's situation should for complete relief need to have such a will in favor of the Home re-delivered for cancellation, then for that relief he would rightly resort to an equity court, for that court alone has the jurisdiction to order the redelivery. 1 *Pomeroy, Equity Jurisdiction*, sec. 171. A will, it is true, may be revoked by executing another will, without having the former in hand for destruction, but conceivably Marley might not wish to make another will, or if he did wish it, leaving a previous will outstanding in the hands of a legatee named in it renders the revocation practically unsatisfactory as a remedy. And because of this desirability of a return of the will if he was entitled to the relief sought, we think the court of equity properly took jurisdiction.

We construe the contract to intend a return of all the money or property previously transferred, less the five dollars per week for the period of care. It speaks only of a return of an admission fee upon termination, but it seems too unreasonable to suppose that the officials of the Home intended the termination to let an inmate go within the six months deprived of all resources. Termination we take to mean rescission, to that extent, at least. But, assuming this to be so, counsel for the Home contend that the clause for optional termination during the probation period was intended to provide only for termination because of lack of satisfaction with living at the Home. We think the words of the clause too broad for that construction, whatever may have been the purpose in inserting them; that to accomplish that purpose an unqualified option to terminate has been given. So with a contention that the option was given only to one who had dealt fairly with the Home in good faith, and would exercise the option solely upon the ground of satisfaction or dissatisfaction with living at the Home—these qualifications are not included in the actual contract.

And as to the contention that the previous concealment of resources and attempt at fraud on the Home, alleged in the

answer, renders Marley a plaintiff with unclean hands, and because of that disentitled to relief from a court of equity, we have been unable to agree with the appellant, because that action on Marley's part is past and closed, and the court would not be aiding or effectuating it now by granting the relief he asks. The general principle that he who comes into equity for relief must come with clean hands himself has nothing to do with retribution or punishment, or with disapproval of the character or past behavior of the applicant, but only with the effect of his present application. It is, in other words, that equity will not aid an applicant in securing or protecting gains from his wrongdoing, or in escaping consequences of his wrongdoing. *Equitable Gas Lt. Co. v. Baltimore Coal Tar Co.,* 65 Md. 73, 84. Marley's demand here is that, after his wrongdoing had been corrected and the rights and obligations of the parties settled under the contract as they should have been, the contract be now carried out in respect to the option to terminate it, and that the adjustment necessitated by the exercise of that option be made.

We consider that the demurrer to the answer was properly sustained.

*Decree affirmed, with costs to the appellee.*