JOHN McSHAIN, INCORPORATED *v.* EAGLE
INDEMNITY COMPANY
[No. 82, October Term, 1941.]

*Decided January 13, 1942*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Edward L. Ward,* with whom was *J. Irvin McCourt* on the brief, for the appellant.

*Paul M. Higinbothom,* for the appellee.

MARBURY, J., delivered the opinion of the Court.

This case is before us on appeal from an order of the Circuit Court of Baltimore City sustaining the appellee's demurrer to the appellant's amended bill of complaint. The amended bill of complaint shows that the appellant was under contract with the Housing Authority of Baltimore City to erect certain homes. As a part of this contract it had to demolish the old buildings on the land and clear it. It accepted a proposal of a certain Murray T. Shipp, trading as Union Wrecking Company, on June 10, 1940, whereby Shipp agreed to do this demolishing and clearing work for the sum of $8,500, the copy of this proposal being filed with the bill.

While the bill states that the proposal was made by the Union Wrecking Company, the exhibit is in a form of an order by the appellant to the Union Wrecking Company, and while it appears to have been signed

by the appellant, there is no acceptance by the Union Wrecking Company. This order is dated June 10, 1940, and requires the work to be completed, part within ten days and part within fifty days. It also contains this clause: "It is further understood * * * that you will furnish bond to the general contractor in the sum of fifteen thousand dollars ($15,000) covering the completion of your work." The bill of complaint recites "that under the provision of said proposal and said sub-contract," the Union Wrecking Company agreed to furnish the bond mentioned in the preceding paragraph, "and thereupon said bond in said penalty of the defendant, Eagle Indemnity Company, was delivered to your orator conditioned as aforesaid." The bond designated the address of the appellant at Orleans and Eden Streets, and failed to state that the appellant was a Maryland corporation. The appellant returned the bond by mail to the appellee, with the request that its address be changed to No. 3 West Franklin Street; that it be designated as a Maryland corporation; and that there be included in the bond a forbearance clause, which is set out in full in the appellant's letter, dated June 6, 1940, and filed as an exhibit. On the next day, June 7, 1940, the appellee replied to this letter, the reply being also filed as an exhibit. In this reply the appellee states that it has rewritten the bond, changing the address and indicating that the appellant is a Maryland corporation, but declines to add the forbearance clause to the bond. This reply called attention to the fact that the bond refers to a certain written contract "which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein." The reply further adds that just as soon as Mr. Shipp has executed the rewritten bond, the appellee will forward it to the appellant. The bill of complaint alleges that the appellee, having learned after this letter of June 7, 1940, of default in performance of the sub-

contract by the sub-contractor, failed and refused to return the original bond or the re-executed bond to the appellant, although the appellant made frequent demands for the return. The further allegation is made that the appellee's action in this respect was wilful and deliberate in order to defraud the appellant of its rights in the bond or the re-executed bond.

Mr. Shipp, the sub-contractor, defaulted in the performance of his contract, and as a consequence, the appellant was compelled on July 24, 1940, to award the contract to another wrecking company, and thereby sustained a loss in the sum of $23,884.63. The claim is made that the appellee is liable to the appellant on the original bond in the penalty of $15,000, and that the appellee should be required to deliver up and surrender to the appellant the original bond, or the re-executed bond, and a decree be entered in favor of the appellant against the appellee in the sum of $15,000. The appellant alleges that it has no adequate or complete remedy at law.

The prayers of the bill are for the surrender of the original or the re-executed bond, for a decree for $15,000, and for further relief. The appellee demurred, relying primarily on the grounds, first, that the surety bond alleged to have been breached referred to a written contract, and not to a verbal agreement, and there is no allegation in the bill of complaint that there is in existence any written, valid contract between the appellant and the sub-contractor, and second, that the first bond was not accepted by the appellant and the second bond was not shown to have been executed by the principal and delivered to the appellant and accepted.

A surety bond is a contract and is to be construed as such. *Hartford Accident, etc., Company v. W. J. Knox Net and Twine Company,* 150 Md. 40, at page 45, 132 A. 261, and cases there cited; *Mayor and City Council of Baltimore v. Maryland Casualty Company,* 171 Md. 667,

at page 675, 190 A. 250. In order to make a bond a binding obligation, it must be executed by the obligor and delivered to and accepted by the obligee. *State v. Gaver,* 115 Md. 250, 80 A. 891; *Stearns, The Law of Suretyship,* 4th, Ed. Section 123, Page 194. If a bond is delivered to the obligee, and he retains it, there is an implied acceptance. *Engler v. People's Fire Insurance Company,* 46 Md. 322.

In the case of *Haupt v. James Cravens & Co.,* 56 Tex. Civ. App. 253, 120 S. W. 541, a local insurance agent tendered a bond to his general agent conditioned on the performance of certain enumerated acts. The general agent wrote to the principal, but not to the obligors, that special inquiry would be made into the financial standing of the latter, and that if the inquiry proved satisfactory, the paper would be finally accepted. The local agent continued to operate, no further word was said about the bond, and no notice was ever given to the obligors one way or the other. The court held that this was an absolute obligation. In the case of *Village of Chester v. Leonard,* 68 Conn. 495, 37 A. 397 a bond was given to the village for a construction contract. The Board of Water Commissioners of the village took the bond into their possession to hold, subject to further action. No further action was taken and the court said that the suit subsequently brought on the bond supplied the want of further action.

These and similar cases in other jurisdictions illustrate the principle that while there must be acceptance of a bond, such acceptance will be presumed from the retention of the bond, even where that retention is for the purpose of later approval, and no approval is later given. In the case before us the bond was not retained, but was returned, and the question, therefore, turns upon the effect of that return and the letter accompanying it. In Restatement of the Law of Contracts, Vol. 1, Section 38, it is said: "A counter-offer by the offeree, relating to the same matter as the original offer, is a rejection of the original offer, unless the offeror

in his offer, or the offeree in his counter-offer states that in spite of the counter-offer the original offer shall not be terminated."

The appellant returned the bond, not only for the making of slight corrections, such as the change of the address, and the insertion of a corporate location, but also for the purpose of having inserted in it an important clause. It did not indicate in any way whether or not it would accept the bond without that clause. It did not accept it without it, but returned it. It is true that the request to insert the forbearance clause was made in polite terms, and was not in the form of a demand. Nevertheless, politeness does not indicate lack of decision. The bond was not retained for further consideration by the obligee, as in the cases above quoted, but was returned to the obligor for its further consideration, which is an entirely different matter. The amended bond, if it was ever executed, was not delivered and, therefore, the appellant had no opportunity to accept it.

The appellant strongly urges that the appellee should not be permitted to evade its liability by withholding its bond. It cites in support of this contention a number of cases, the first of which is *Equitable Gaslight Company v. Baltimore Coal Tar & Mfg. Co.*, 63 Md. 285, and the last is *Aged Women's & Aged Men's Homes v. Marley*, 156 Md. 478, 144 A. 521. These cases are authority for the proposition that where an instrument should be in the possession of one under an agreement, and is in the possession of another, the equity court will direct its delivery to that one who is entitled to rightful possession. In the *Gaslight Case* there was a written contract under which the defendant had been making deliveries, although it did not appear to be known whether the contract had actually been signed by the defendant or not. In the case of *Phoenix Insurance Company v. Ryland*, 69 Md. 437, 16 A. 109, 1 L. R. A. 548, there was a book in which an entry of insurance should have been made. There

was no question about the acceptance of the risk and the voyage was undertaken on the strength of the acceptance of the insurance. In the case of *Heinz v. Twenty-Sixth German-American Building Association*, 95 Md. 160, 51 A. 951, there was a policy of fire insurance, which was withheld by the insurance company and a building association mortgagee, and here again there was no question that the policy was in force. In the *Marley case*, *supra*, 156 Md. 478, 144 A. 521, the court compelled the redelivery of a will to which the appellee was entitled under a contract. In all of these cases the basis upon which the equity court exercised its authority was the fraudulent withholding by one party to a contract of certain papers to which the other party was entitled. Each case has as its foundation the existence of a valid and subsisting contract between the parties. In the absence of any contract, the complaining party would have no right to the paper or document.

In the case of *Downs v. Gunther*, 128 Md. 626, 98 A. 138, 139, an attempt was made to require an individual, who was one of the members of an insolvent corporation, to assign to the receiver and to turn over to him a lease of certain property formerly occupied by the corporation. The court below ordered this to be done, but this court, after an examination of the evidence, reversed the order, because in its opinion the evidence failed to establish the contention that the lease in question belonged to the corporation. In so deciding, we said: "In the case at bar there is not, as we have said, the slightest evidence of any agreement or understanding that the lease was to be assigned to the corporation, and in the absence of such an agreement or understanding Wilfred C. Downs was under no obligation to make the assignment."

The case before us falls within the last-named decision. The evidence does not establish that there ever has been a meeting of the minds between the appellant and the appellee as to the form of the bond which

would be accepted by the appellant. There was no acceptance of that bond by the appellant, and there exists no agreement between it and the appellee. Since there is no existing agreement, there is no right arising out of it, and the appellant is not entitled to the relief prayed in its bill of complaint.

> *Decree affirmed, with costs to the appellee, and cause remanded for further proceedings.*

FORSYTHE, J., dissents.