PURVIS et al. v. BAZEMORE.

District Court, S. D. Florida.

Dec. 2, 1933.

Bradley & Wehle, of St. Petersburg, Fla., for complainants.

AKERMAN, District Judge.

The complainants, who aver themselves to be residents of Pinellas county, Fla., and persons regularly engaged in the cleaning and dyeing trade on behalf of themselves and others similarly situated, bring their bill of complaint against Samuel Bazemore, alleged to be a resident of the city of St. Petersburg, Pinellas county, Fla., and also alleging that he is regularly engaged in the cleaning and dyeing business under different trade-names.

The bill alleges that a code of fair competition for this trade was approved by the President of the United States of America on November 8, 1933, and became effective November 20, 1933, and even prior to the approval of this code the defendant advertised under the insignia of the Blue Eagle, but fails to allege whether the defendant ever signed the code for the cleaning and dyeing trade.

The code for fair competition for the

cleaning and dyeing trade is not set out in full, but the bill does set out certain things that are prohibited, among others, misleading advertisements and selling below regional prices. The prices fixed for the trade under this code are set out in a schedule which is attached to the bill and marked Exhibit A, and it is alleged that the defendant is not only publishing misleading advertisements, but is selling far under the regional prices. It is also alleged that defendant is violating the code by allowing or causing certain employees to work sixty hours per week, whereas the maximum that employees could work under said code is forty-eight hours per week. The prayer of the bill is for an injunction against such violations by the defendant and for a temporary restraining order.

■ Counsel for the complainants asked me to proceed ex parte for the reason that he had been unable to locate the defendant in order to serve him with notice, but had left a copy of the notice on the veranda of the defendant's residence, together with a copy of the bill, and was unable to furnish proof that defendant had ever received the notice or copy of the bill. The complainants were given leave to proceed ex parte, but during the hearing some one representing the defendant called counsel for the complainants over the telephone, and I am advised that it was admitted in this conversation that defendant had received notice and did not care to be present. So, for the purpose of considering the propriety of the granting of the temporary restraining order, the sworn bill will be taken as true, and it will be considered that the defendant has had notice and has offered no opposition to the granting of the restraining order, which, under ordinary circumstances, would authorize the court to grant the restraining order, but, before a man can hang up his hat, he must have a peg to hang it on, and, before the court is authorized to grant even a temporary restraining order, the court must be satisfied that the bill of complaint states a cause of action in a controversy over which the court has jurisdiction. I therefore, after hearing the arguments of counsel for the complainants, took the matter of granting the temporary restraining order under advisement, and now, after due consideration, I am prepared to rule that the court must decline to grant even the temporary restraining order for the reasons that I am satisfied that the bill of complaint does not state a cause of action within the jurisdiction of the United States District Court, and that the restraining order would be a mere gesture to which

the court could not compel obedience if the restraining order was disobeyed.

I am prompted to make this ruling by the following considerations:

■ If the validity of an act of the Legislature of one of the states is drawn in question, every presumption is in favor of the act of the Legislature, and, before the same can be held invalid, there must be some clear provision of the Constitution of the state or of the United States prohibiting the act of the Legislature. On the other hand, when the validity of an act of Congress is drawn in question, the court, before sustaining such act, is bound to discover in the Constitution of the United States either an expressed or implied grant of authority to Congress to enact such legislation.

■ If the operation of a local cleaning and dyeing establishment, or what is more commonly called a pressing club, is to be construed as coming within the purview of the act of Congress commonly known as "The National Industrial Recovery Act," then I am bound to hold that Congress had no power under the Constitution to enact the National Industrial Recovery Act. I do not mean to hold that the National Industrial Act in its entirety is without constitutional authority, but merely to hold that, if it is to be construed as authorizing the regulation of a local pressing club, then there is no authority in the Constitution for the enactment of the same.

Section 1 of the National Industrial Recovery Act (15 USCA § 701) attempts to justify the enactment of the same upon two theories: One is to remove obstructions to the free flow of interstate and foreign commerce, and the other is in the time of an emergency to provide for the general welfare by promoting the organization of industry for the purpose of cooperative action among trade groups. It is conceded by counsel for complainants that neither the complainants nor the defendant are engaged in interstate commerce, and, without such concession, it would require a stretch of imagination beyond the power of this court to conceive that a local industry engaged in the pressing, cleaning, and dyeing of clothes was engaged in interstate commerce. So, if the code for this industry is to be justified under the Constitution, it must be upon the ground that an emergency exists which would justify Congress in attempting to regulate a purely intrastate business, and I can find no authority in the Constitution which authorizes the

national government in any emergency to depart from its constitutional function and invade the reserved power of the states. Mr. Justice Davis, speaking for the Supreme Court in the case of Ex parte Milligan, 4 Wall. 2, 18 L. Ed. 281, made the following announcement, which, in so far as I am advised, has never been questioned by any court in the land:

"The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances. No doctrine, involving more pernicious consequences, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Such a doctrine leads directly to anarchy or despotism, but the theory of necessity on which it is based is false; for the government, within the Constitution, has all the powers granted to it, which are necessary to preserve its existence." Ex parte Milligan, 4 Wall. 2 at pages 120 and 121, 18 L. Ed. 281.

I am not unmindful that Congress at its recent session found not only the United States, but the whole world, to be in a deplorable condition, nor do I criticize the noble motive prompting Congress and the President to attempt to relieve this condition, but I cannot conceive of any emergency, especially in the time of peace, which would authorize Congress to ignore the Constitution and enact measures tending to regulate purely local business within the several states. Article 6, clause 2, of the Constitution, provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Every judge of the United States and of the several states is required, upon entering upon the discharge of his duties, to take an oath to support and defend the Constitution of the United States. I have held several offices under the United States, and have been admitted to the courts of several states, to several of the courts of the United States, including the Supreme Court of the United States, and upon each occasion took an oath to support the Constitution of the United States. For some reason this oath, solemn as it was, never impressed me with half the

force as the oath which I took in the presence of my family and members of the bar upon assuming the duties of United States District Judge, and I then rededicated the remainder of my life to an attempt to uphold this Constitution, and with that oath before me I must hold that Congress had no authority to attempt to regulate purely intrastate business.

[4] I must deny the restraining order for another reason. Clause (c), section 3, of the National Industrial Recovery Act, 15 USCA § 703 (c), provides: "The several district courts of the United States are hereby invested with jurisdiction to prevent and restrain violations of any code of fair competition approved under this chapter; and it shall be the duty of the several district attorneys of the United States, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations."

This clause, in my opinion, contemplates that actions to restrain violations of the National Industrial Recovery Act should be brought by the United States acting through its district attorneys and not by any individual members of an industry, and the district attorney is not movant here, but persons engaged in the same industry are complainants, and I do not believe they have any standing in court to ask for an injunction under the National Industrial Recovery Act.