## CHICAGO FLEXIBLE SHAFT CO. v. KATZ DRUG CO.

No. 1048.

District Court, D. Delaware.

Feb. 23, 1934.

John M. Zane (of Zane, Morse, Zimmerman & Norman), of Chicago, Ill., and Hugh M. Morris, of Wilmington, Del., for plaintiff.

Robert H. Richards, of Wilmington, Del., and Paul Stinson and Arthur Mag (of Ryland, Stinson, Mag & Thomson), both of Kansas City, Mo., for defendant.

NIELDS, District Judge.

This motion for a preliminary injunction was heard upon bill and affidavits filed by each side. After the hearing, defendant filed its answer.

Plaintiff is a manufacturer of electrical appliances which it ships from its factory in Chicago to jobbers in the principal cities of the United States who in turn sell them to retailers. By its merchandising methods plaintiff parts with title to its products when it sells them to jobbers and in turn jobbers part with title when they sell to retailers. Articles sold by plaintiff include a kitchen electrical appliance for preparing food and drink designated by the trade-mark "Mixmaster." Pursuant to a long established business policy plaintiff has attempted to fix the retail price of Mixmasters by selling to jobbers who promise to sell only to retailers maintaining the fixed price. Before September 10, 1933, the retail price fixed by plaintiff for Mixmasters was $19.50 per article. Thereafter the price fixed by plaintiff was $21. The price structure attempted to be imposed upon the trade by plaintiff was: Jobbers $10.50, retail dealers about $12.60, the public $21. Thus plaintiff includes a profit load of 100 per cent. between its price to jobbers and the price to the consuming public.

Defendant operates a chain of cut-rate drug stores; five in Kansas City, Mo., and one in each of the following cities: Kansas City, Kan.; St. Joseph, Mo.; and Des Moines, Iowa. It sells at cut-rate prices drugs and sundries, including electrical appliances for the home such as Mixmasters. For twenty years defendant has been selling at cut-

rate prices, but at prices which afford a fair profit because of the large volume of sales. By extensive advertising defendant has a widespread reputation as a retail seller at cut-rate prices.

Defendant's conduct, complained of by plaintiff, occurred in the fall of 1933, but more particularly during the week beginning December 3d. Earlier, in August defendant negotiated with a jobber for a quantity of Mixmasters but was told plaintiff forbade the sale to defendant. In September and October defendant purchased Mixmasters at a cost slightly over $11 and sold them at $14.98. In the Sunday editions of the Kansas City Star through October and November defendant advertised "Sunbeam Portable Electric Mixmaster" at $14.98. In the issue of October 15th defendant incorrectly advertised Mixmasters as the "Newest 1934 Model," but on the following Sunday changed the advertisement to "Newest 1933 Model." In the November advertisements defendant puffed sales with such phrases as "Latest Model," "Nationally Famous Portable Electric Mixmaster," "Million Dollar Sale," "Katz Anniversary 'Gift Price' to Housewives!" etc. In the issue of November 17th defendant advertised an auction and included a Mixmaster in the list of "a few of the 15,000 items that will be auctioned off." The bill avers the auction was held December 2, 1933; was attended by many thousands and that defendant announced the items auctioned off had been donated to it.

The advertising above and cut-rate selling of Mixmasters apparently wounded plaintiff's feelings. So plaintiff mailed a form letter dated December 3, 1933, to Mixmaster retail dealers in the trade territory served by defendant. It was headed "Special Urgent Notice" and began, "Katz Drug Company in Kansas City have been advertising Mixmaster in the Sunday newspapers at $14.98. We do not sell Katz Drug Company, nor will we sell them. Nor will we sell a distributor, if we can find out that he sells Katz." Plaintiff urged retailers to institute a price war against defendant and agreed to pay the cost of the warfare. The form letter continued:

"Now

"To enable you to combat this insufferable competition against your regular selling price, please consider this as your authority to advertise by posters in your window, folders or newspapers, a price $1.00 below any price for Mixmasters Katz Drug Company may advertise, either in the newspapers or by circular, for one week immediately after the appearance of any such Katz advertisement or circular.

"We have arranged with your jobber that wherever you are obliged to make this cut in price you may send a copy of your sales ticket to the jobber from whom you purchase Mixmasters and he will issue you a credit on such sales so as to leave you a margin of 25 percent.

"We do not propose to have our Mixmaster sales by our legitimate dealers wrecked in this way if we can prevent it.

"So let the Katz Drug Company do the advertising, and you make the sales, if they like that sort of thing.

"Chicago Flexible Shaft Company."

Accordingly, in the Kansas City Star for Monday, December 4th, plaintiff caused to be published an advertisement offering "The Famous Sunbeam Mixmaster—Portable—Latest Model—Regularly Sells for $21—This Week $13.95." The following day, defendant countered by advertising in the Kansas City Times for Tuesday, December 5th, "Katz—Headquarters for The Famous Sunbeam Mixmaster—Portable—Latest Model—Regularly Sells for $21—now Katz Stores only—$12.98." On the same day, plaintiff caused to be published in the Star an advertisement offering "The Famous Sunbeam Mixmaster—Portable—Latest Model—Regularly Sells for $21—Balance of this Week $11.98." The next day, defendant advertised in the Star for Wednesday, December 6th, "Headquarters for the Famous Sunbeam Mixmaster—Portable—Latest Model—Regularly Sells for $21—Katz Super Special—$11.48." The day following, plaintiff caused to be published in the Kansas City Times for Thursday, December 7th, an advertisement offering "The Famous Sunbeam Mixmaster—Portable—Latest Model—Regularly Sells for $21—Balance of this Week $10.98." Next day, defendant advertised in the Star for Friday, December 8th, "Headquarters for the Famous Sunbeam Mixmaster—Portable—Latest Model—Regularly Sells for $21.00—at Katz Deep Cut Prices." Plaintiff alleges in its bill that the depth of this cut by defendant was $9.98. At this point plaintiff desisted from further price cutting having forced defendant, as it alleges, to sell below cost.

It appears that during a part of Friday, December 8th, defendant sold 15 Mixmasters at $9.98. Although plaintiff precipitated this

price drop, it complains that defendant in selling these 15 articles at $9.98 violated article VIII of the Retail Drug Code because that price was below cost to defendant. While the price of $9.98 was lower than some of defendant's previous purchases, nevertheless, when this small number was sold the price was above replacement cost to defendant. December 7th defendant had entered into contracts enabling it to purchase Mixmasters at $9.50 and $9.23 and under those contracts 36 Mixmasters had been delivered to defendant. It follows that defendant did not sell below cost when it advertised sales at $9.98 and did not violate article VIII of the Retail Drug Code. In any event such violation would be a matter of immediate concern to the United States. Purvis et al. v. Bazemore (D. C.) 5 F. Supp. 230. In the succeeding week defendant published in the Star an advertisement offering Mixmasters at $14.98 and thereafter substantially adhered to that price.

In its bill of complaint plaintiff charges that defendant formed a plan or design maliciously and unlawfully to injure the business and good will of the plaintiff and to carry on unfair competition with plaintiff by purchasing Mixmasters and advertising and selling them at greatly reduced prices and thus to cause jobbers to believe that plaintiff had sold Mixmasters directly to defendant and had co-operated with defendant in sales at such prices and thereby to cause jobbers and retailers to decline to deal in Mixmasters and to cause them to cancel orders with plaintiff and to destroy the business and sale of Mixmasters. Plaintiff further alleges that, in pursuance of said plan or design, defendant purchased a number of Mixmasters, published the advertisements complained of, and auctioned off a Mixmaster.

In the proof I find no evidence whatever that defendant formed or carried out such a plan or design. I find no evidence that de-fendant carried out any malicious or unlawful plan or design against plaintiff's business or represented, in advertising Mixmasters, that plaintiff granted to defendant authority to advertise and sell Mixmasters. On the contrary, I find that defendant purchased a number of Mixmasters and thereafter sold them at a profit in the usual and ordinary course of its business and in accordance with its long established practice of selling at cut-rate prices but without any malice toward plaintiff and without any intent to injure plaintiff's business. The only departure from this normal course of business was the cut-rate war during the week of December 3d herein described.

Defendant has the right to sell Mixmasters, which it buys outright, at a reasonable profit to itself, even though the prices paid are less than the price at which plaintiff is striving to maintain all retail sales. To restrain defendant, either temporarily or permanently, from selling plaintiff's product at less than $21 per article, would destroy that right of defendant. A manufacturer, who has sold his product outright, may not by contract with his purchaser, or by co-operative methods, or by confederation with others, dictate and maintain a fixed retail price. Such contracts and such practices are unfair competition, are in restraint of trade, and are contrary to public policy. Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502; Federal Trade Comm. v. Beech-Nut Co., 257 U. S. 441, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882. Plaintiff's bill of complaint and the unchallenged facts in this record disclose a systematic infraction of the policy of the law against restraints of trade and of free competition.

It is apparent that the ultimate relief prayed for will be refused and, therefore, a preliminary injunction should not issue.

The motion for a preliminary injunction will be denied.