**TABLE SUPPLY STORES, Inc., v. HAWKING, National Recovery Administration Field Adjuster, et al.**

No. 1583.

District Court, S. D. Florida, Tampa Division.

Jan. 23, 1935.

Shackleford, Ivy, Farrior & Shannon, of Tampa, Fla., for plaintiff.

John W. Holland, U. S. Atty., of Jacksonville, Fla., and John T. Grigsby, Regional Litigation Counsel, Legal Division N. R. A., of Atlanta, Ga., for defendants.

AKERMAN, District Judge.

I have on three separate occasions decided that, if the National Industrial Recovery Act (48 Stat. 195) is to be construed so as to give the executive branch

of the government the right to regulate or control a purely intrastate business as contradistinguished from interstate commerce, then the National Industrial Recovery Act is without constitutional authority of Congress to enact such legislation, and is therefore null and void.[1] This is the settled law of the division of this district over which I preside until such decisions are reversed by one of the proper appellate courts.

The picture presented by the sworn bill, which, not being denied, is to be taken as true for the purpose of granting or refusing an interlocutory injunction, is enough to shock the sensibilities of a person trained in the belief that we are living under a constitutional government where the citizen is governed by laws and not by men. According to the bill, the complainant is a corporation engaged in a purely intrastate mercantile business, with branch stores in various cities throughout the Southern district of Florida, and one of the respondents, through a secret investigation, procured affidavits and forwarded the same to another respondent, whereupon the other respondent made a report to the Regional Compliance Board of the National Industrial Recovery Administration which holds its sessions in another state approximately five hundred miles away from the present office of the complainant; whereupon the complainant is cited to appear before the Regional Compliance Council at Atlanta, Ga., and, upon complainant's representative appearing, the Regional Council refused to furnish complainant with a copy of the charges filed against it or the names of the witnesses from which such charges are founded, and the Regional Council proceeded to try the case against complainant on affidavits, the names of the makers of such affidavits and the contents thereof being concealed from the complainant. After this mockery of a trial, the following order was made by the Regional Council against the complainant:

"1. The respondent shall give access to its books and records to an independent auditor to be selected by the local Food & Grocery Distributors Code authority at Tampa, Fla., for the purpose of checking respondent's payroll from the effective date of the Code up to the present time. The respondent shall make full and immediate restitution of all back wages found to be due by said auditor. The respondent shall make full and immediate restitution within five days through the office of the State Director of all wages found to be due by the said audit, and all overtime shall be paid for at the rate of time and a third.

"2. The respondent shall agree to install in all of its stores an adequate system for the keeping of the time records of its employees.

"In the event that the respondent fails to sign and return to this office the certificate of compliance on or before January 5th, 1935, we recommend that the respondent's blue eagle be removed and the case be referred to the Litigation Division for further action."

And the Regional Council attempted to require that the complainant sign the following remarkable document:

"Table Supply Stores, Inc.,
"St. Petersburg, Florida
"Regional Compliance Council, 625 Citizens & Southern Natl. Bk. Bldg., Atlanta, Georgia
"Gentlemen: At its meeting on December 28, 1934, the Compliance Council found that Table Supply Stores, Inc., had violated the Code of Fair Competition for the Retail Food and Grocery Trade.

"Being desirous of cooperating with the NRA in administering this Code, and of removing all ground of complaint of violation of the code, Table Supply Stores, Inc., certifies and agrees to do the following things:

"1. It agrees to permit a full examination of its books, accounts, and records by an independent auditor to be nominated by the State Director. It agrees to pay all of the expenses of the audit by the said auditor.

"2. It agrees to make full and immediate restitution within five (5) days after notification through the office of the State Director of all back wages found to be due by the said auditor to the employees and all overtime to be paid at the rate of time and one-third.

"3. It agrees to install in all of its stores an adequate system for keeping of time records of its employees.

"4. It certifies and agrees that it will in the future comply with the letter and spirit of all of the provisions of the Code

---

[1] See Purvis v. Bazemore, 5 F. Supp. 230. No written opinions filed in other cases.

of Fair Competition for the Retail Food and Grocery Trade.

"Table Supply Company, Inc.,
"By: ———.

"Signed: This ——— day of ———, 1934.
"Witness:
"———."

The contention of the complainant is that the result of its noncompliance with the order of the Regional Council will bring down upon it the wrath of the entire executive branch of the United States government and cause criminal prosecutions to be entered against it. The bill is necessarily rather vague as to what will be the consequences of the complainant's noncompliance, but whatever is left doubtful by the bill is supplied by the affidavit of Reuben J. Martin, chairman of the Regional Compliance Council for Region No. 4, in which he graphically described the star chamber proceedings before the Compliance Council and attaches thereto a memorandum issued by the National Recovery Administration under date of December 10, 1934, addressed to all National Industrial Recovery Administration Regional Directors, and headed: "Procedure to be followed in withdrawing and restoring the right to display the blue eagle." A perusal of this remarkable document would cause any citizen to wonder whether he is still living under and is protected by the Constitution of the United States or whether he is in the country of a Stalin, a Mussolini, or a Hitler. It would unnecessarily lengthen this opinion to make any complete recital of this document, but it suffices to say that, after directing in minute detail how the star chamber proceedings shall be held, it contains as an appendix forms of telegrams to be sent out by which a national, if not international, boycott will be made effective against the alleged offender.

From all of the foregoing it appears that, through a proceeding brought about by the respondent F. W. Hawking, the Field Adjuster, and the respondent Walter Hawkins, the State Compliance Director, all of the machinery of the government has been started in motion to intimidate the complainant into submitting to the unauthorized and arbitrary dictation of the National Recovery Administration.

The difficulty in regard to the issuance of an interlocutory injunction against the respondents Hawking and Hawkins is that it appears from the bill and the affidavit presented that they have completed their part of the investigation and passed the matter along to others, and are not now before the court, and therefore an injunction would be futile as against them, and the other respondent, the district attorney, contends that no interlocutory injunction should be granted as against him, for the reason that he has not as yet been instructed by his superior officers to institute a prosecution against the complainant for alleged violations of the code of fair competition; or, in other words, the complainant, in attempting to protect its rights, is like the victim of the shell game at a county fair trying to find the pea under one of three walnut shells, and every time he lifts a walnut shell the pea is not there. It is insisted that the court cannot enjoin Hawking and Hawkins because the pea has already gotten out from under their walnut shells, and the court cannot enjoin the district attorney because the pea has never reached his walnut shell.

The district attorney is a high-minded and conscientious officer and a gentleman for whom I have the highest regard, but I think it is fair to assume, having served years in the district attorney's office myself, that the district attorney will obey any instructions which he may receive from his superior officers in Washington, and it fully appears from the bill and the affidavits presented that the beginning of an unauthorized criminal prosecution against a complainant for alleged violations of the code of fair competition has been put into the circumlocution mill at Washington, and it is a fair inference that it will sift down to the United States attorney of this district with instructions to institute a prosecution against the complainant. All of this will be done without any warning of, or notification to, the complainant, and the next it will hear of the matter will be a criminal indictment or indictments, and, inasmuch as the prosecutions may be cumulative under the authority of numerous decisions of the Supreme Court of the United States, particularly the recent case of Panama Refining Co. et al. v. Ryan et al., 55 S. Ct. 241, 79 L. Ed. ——, decided January 7, 1935, will authorize the grant of an interlocutory injunction against the district attorney.

I am of the opinion that no interlocutory injunction can issue against the respondents Hawking and Hawkins in regard to what they have already done in connection with the alleged case against the com-

plainant, but the interlocutory injunction should be granted against the district attorney enjoining him until the further order of the court from instituting any criminal prosecution or prosecutions against complainant in or about the matters complained of, and, if the bill and its prayers are amended so as to show the necessity therefor, an interlocutory injunction may issue against the respondents Hawking and Hawkins enjoining them from any further interference in any way with the complainant's business until the further order of the Court.