# LADEW *v.* TENNESSEE COPPER COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TENNESSEE.

No. 495.   Argued October 19, 1910.—Decided November 28, 1910.

Plaintiffs, citizens of States other than that of the defendant, brought suit against the defendants in the Circuit Court of the United States for a district of which neither plaintiffs nor this defendant were inhabitants to compel defendants to abate a nuisance carried on in that district and which was causing damage to plaintiffs' property in another State and in which neither they nor the defendant resided; the Circuit Court dismissed as to this defendant for want of jurisdiction, neither it nor the plaintiffs being inhabitants of that district. In affirming judgment *held* that:

Diversity of citizenship—nothing more appearing—will not give the Circuit Court jurisdiction to render judgment *in personam* where neither plaintiff nor defendant is an inhabitant of the district in which the suit is brought and the defendant appears specially and objects to the jurisdiction.

The jurisdiction given to the Circuit Court by § 8 of the act of March 3, 1875, c. 137, 18 Stat. 470, of suits to enforce legal or equitable claims to real or personal property within the district, even if the parties are not inhabitants of the district, does not extend to suits

to compel the owner of real estate in the district to abate a nuisance maintained thereon. Such a cause of action is not a claim or lien upon the property.

The jurisdiction of the Circuit Courts is determined by acts of Congress enacted in pursuance of the Constitution, and even if the jurisdiction already granted can be extended by Congress, those courts cannot, until such legislation is enacted, exercise jurisdiction not yet conferred upon them.

179 Fed. Rep. 245, affirmed.

THE facts, which involve the jurisdiction of the Circuit Court, are stated in the opinion.

*Mr. Henry B. Closson*, with whom *Mr. Charles Seymour*, *Mr. Charles H. Sheild* and *Mr. Benjamin F. Washer* were on the brief, for appellants:

The decree dismissing the suit against the Tennessee Copper Company is a final decree from which an appeal will lie. *Hohorst* v. *Hamburg-American Packet Co.*, 148 U. S. 262, distinguished, and see *Withenbury* v. *United States*, 5 Wall. 819; *Hill* v. *Chicago & Evanston R. R. Co.*, 140 U. S. 52.

A bill in equity to abate a nuisance is a local suit which can be brought only in the district in which the nuisance to be abated is situated. *Mississippi & Missouri R. R. Co.* v. *Ward*, 2 Black, 485; *Horne* v. *Buffalo*, 49 Hun, 76.

Unless the court below has jurisdiction to abate the nuisance maintained by this defendant, no Federal court has jurisdiction to do it, although the controversy is wholly between citizens of different States. *Greely* v. *Low*, 155 U. S. 67.

If a bill in equity to abate a nuisance maintained upon real property within the jurisdiction of the court can be described as a suit to enforce a claim to or against that property, there can be no question of the jurisdiction of the Federal court of the district in which the nuisance is situated to entertain the suit even as against a non-

resident defendant.  Rev. Stat., § 738; Act of March 3, 1875, §.8; 1 Rose's Code of Fed. Proc., § 856, note *a*, p. 798; *Dick.* v. *Foraker*, 155 U. S. 404.

A bill in equity to procure the abatement of a nuisance which is not only upon but is itself real property within the jurisdiction of the court is, within the precise letter and spirit of the statute, a suit to enforce a claim to or against real property within the district.  *Rex* v. *Rosewell*, 2 Salk. 459, and cases *passim*, cited under "Abatement of Nuisances," 1 Amer. & Eng. Ency. of Law, pp. 63, 79 *et seq.*; *People* v. *Gold Run Mining Co.*, 66 California, 138; *People* v. *Vanderbilt*, 26 N. Y. 287; *Horne* v. *Buffalo*, 49 Hun, 76; 1 Amer. & Eng. Ency. of Law, 2d ed., p. 76.

The test whether a local action comes within the purview of the language of the act or not, is whether the relief required can be given without a judgment *in personam* against an absent defendant.  *York County Savings Bank* v. *Abbott*, 139 Fed. Rep. 988.

The bill in the present suit is one to procure the abatement of a nuisance upon real property and is itself a claim against real property within the jurisdiction of the court, and therefore one of which the court has jurisdiction.

Under the allegations of fact it must here be taken as true that these furnaces, smelters and ovens, emitting gases which destroy the timber upon the adjacent lands, are, as a matter of law, nuisances which the court has jurisdiction to abate through its own officers, if need be, in the manner prayed.  *Campbell* v. *Seaman*, 63 N. Y. 568; *St. Helens Smelting Co.* v. *Tipping*, 11 H. L. Cases, 642; *American Smelting Co.* v. *Godfrey*, 158 Fed. Rep. 225.

*Mr. John H. Frantz*, with whom *Mr. Howard Cornick* and *Mr. Martin Vogel* were on the brief, for appellee:

The appeal is premature, and, therefore, the court is without jurisdiction to hear and determine the same. *Hohorst* v. *Hamburg-American Packet Co.*, 148 U. S. 262;

*Hill* v. *Chicago & Evanston R. R. Co.*, 140 U. S. 52, distinguished, and see *Bank of Rondout* v. *Smith*, 156 U. S. 330; *Ex parte National Enameling Co.*, 201 U. S. 160.

The gravamen of the bill is negligent and improper operation, and the burden of the prayer is for an injunction inhibiting and restraining the operation of the furnaces, smelters, etc., in the manner in which they are now being operated. Such a proceeding is not a local action.

A writ of injunction may be defined as a judicial process, operating *in personam*, and requiring the person to whom it is directed to do or refrain from doing a particular thing. 1 Joyce on Injunctions, p. 4; 1 High on Injunctions, 4th ed., 2; Jereney's Eq., p. 307; *Childress* v. *Perkins*, Cooke (Tenn.), 2; 16 Amer. & Eng. Ency. of Law, 342; Joyce on Law of Nuisances, § 12; 1 Wood on Nuisances, 3d ed., § 77; *Barclay* v. *Commonwealth*, 25 Pa. St. 503.

Even if this proceeding could be regarded as a proceeding *in rem* or a local action, this would not suffice to bring it within the provisions of the statute under consideration. *Roller* v. *Holly*, 176 U. S. 389, 406.

Complainants have no legal or equitable lien upon or claim to property which they are seeking to assert in this case. The statute under consideration has no reference to the assertion of a right not coupled with an interest in the property, or at least, a claim of interest in the property.

No joint action can be maintained against two separate defendants, each owning separate lands, when the sole purpose of that action is to fix a legal or equitable lien upon or claim to respective properties of the defendants, unless there be an allegation that each defendant is interested in the title to the lands of the other defendant. There is no such allegation in the bill in this cause.

There could be no enforcement of a lien upon such a description of land as in the bill. No jurisdiction attaches

by virtue of any lien or claim to defendants' property. It is conceded that no jurisdiction would exist otherwise. The Tennessee Copper Company is a resident of New Jersey, and the complainants are residents of New York and West Virginia. *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444; *So. Pac. Co.* v. *Denton*, 146 U. S. 202.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action in equity was brought by the present appellants, citizens of New York and of West Virginia, against the appellees, the Tennessee Copper Company, a corporation of New Jersey, and the Ducktown Sulphur, Copper and Iron Company, Limited, a British corporation—each of those corporations having its chief office and place of business in Polk County, Tennessee, within the territorial jurisdiction of the Circuit Court.

The business of each defendant is the mining, manufacturing and producing of copper and sulphur ores and products. The plaintiffs are the joint owners in fee and in possession of more than 6,000 acres of land in Fannin, Gilmer and Pickens Counties, Georgia, and have the timber rights in other lands, exceeding 18,000 acres, in the same counties, just beyond the boundary line between Tennessee and Georgia. All these lands are devoted to forestry, have been and are of the greatest value, and contain various kinds of valuable trees. The plaintiffs employ the forests in the production of timber and bark. But for the acts of the defendants, as hereinafter stated, the lands would be sufficient to afford a continuous supply of lumber and bark in large quantities and for an indefinite period in the future. The lands have upon them forests and trees of different growth, which must receive attention and treatment in order to meet the future needs of forestry and bark industry. Before the commission by the defendants of the acts complained of the

forest and timber rights and holdings of plaintiffs approached $100,000 in value, and the damage alleged to be committed by the defendants will exceed $50,000.

The defendants conduct their business in Tennessee within a short distance of plaintiffs' lands. Recently, before the bringing of this action, the defendants erected, or caused to be constructed, and still own, operate and control furnaces, smelters and ovens, all in close proximity to one another, upon lands owned or leased by them in Polk County, Tennessee. In view of those facts the plaintiffs allege that both in law and equity they are possessed of "a right and *claim in, to* and against the lands and tenements of the defendants in the nature of an easement thereupon that the same shall not be used in a manner to injure or destroy the said lands and forests [in Georgia] of your orators adjacent thereto as aforesaid. But the defendants, by means of said furnaces, smelters and ovens maintained by them upon their lands as aforesaid, and in other ways, are, and for some time past have been, generating and causing to be discharged into the atmosphere, vast quantities of smoke, sulphur fumes and noxious and poisonous vapors and gases and other deleterious substances. Within a short distance from the works and property of the defendants the said smoke, fumes, vapors and gases and other deleterious substances so generated by each respectively inextricably mingle and are together discharged upon the lands and forests and trees of your orators, and as a result thereof great damage has been done and injury is threatened as hereinafter appears."

The plaintiffs further allege that said fumes, gases and vapors have already destroyed a considerable portion of their forests and trees; that unless they receive the relief asked their entire holdings will be destroyed, and their property and interests rendered valueless; that such fumes, gases and vapors have descended upon

plaintiffs' forests and trees, killing the trees and ruining the timber; that the destruction so created and produced is constantly increasing in extent, and includes forests and trees of every variety and species, and in all stages of growth and development; that the taller trees that serve to protect the smaller growth have been the first to suffer damage and destruction; that the enlargement of the zone of destruction is due to the fact that the death of the trees already brought about permits the smoke, fumes, gases and vapors that are constantly increasing in quantity to travel farther before being absorbed; that the forests and timber, destroyed as stated, would have made good lumber, railroad ties, and tanbark, and could have been utilized for purposes of trade and commerce; and that the acts of the defendants, unless restrained by the court, will destroy all the forests, old and young, as well as the timber and bark rights of the plaintiffs.

The bill also alleges that the smoke, fumes, gases and vapors so generated and discharged on the property of the plaintiffs will destroy all forms of plant and tree life, including vegetables, crops, grasses and orchards; that by such destruction the soil loses all moisture and compactness, and, being washed away by the rains, the remaining part of plaintiffs' lands will be rendered bare and barren; that the smoke, fumes, gases and vapors are unwholesome and injurious to the life and health of all coming in contact with them, and render the lands unfit for occupancy; and that the plaintiffs, as well as the Bureau of Forestry of the United States, have frequently demanded that defendants abate the above nuisance, but the latter have refused to obey such demand, leaving plaintiffs no other alternative except to seek an injunction to prevent the above wrongs.

The specific relief asked is a decree that the defendants shall not use their property in Tennessee so as to destroy

or injure the plaintiffs' lands and forests in Georgia; that the alleged nuisance maintained by defendants be abated under the direction of the court through its own officers or otherwise as shall seem suitable and right; and that the defendants be enjoined "from maintaining, operating, directing or permitting upon their land or premises [in Tennessee] the operation or maintenance of any oven, roast heap, pit, furnace or appliance generating or giving forth any of the smoke, gases, fumes or vapors hereinbefore complained of, or otherwise generating, producing or causing any foul or dense or copper or sulphurous smoke, or any noxious, poisonous, unhealthy or disagreeable, or in any manner injurious vapor, gas, fume or odor upon the territory or lands of your orators" [in Georgia].

Such was the case made by the plaintiffs' allegations in their bill.

The summons was served in Polk County, Tennessee, on the General Manager of the Tennessee Copper Company, the highest officer of that corporation; on the British corporation, by leaving a copy with its Acting General Manager in the same county. Each defendant corporation has, as already indicated, its main office and is conducting its business in that county.

The Copper Company, the New Jersey corporation, appeared for the special and sole purpose of objecting to the jurisdiction of the Circuit Court. The British corporation appeared for the special purpose only of entering a motion to dismiss the bill for want of jurisdiction as to it, as well as for want of proper parties. The court, speaking by Judge Sanford, who delivered a well-considered opinion in the case, sustained the motion of the Tennessee Copper Company, and dismissed the bill as to it. The motion of the British company was overruled, the court holding that it had jurisdiction over the alien corporation. *Ladew* v. *Tennessee Copper Co.*, 179 Fed. Rep. 245. There was no appeal by the latter corporation.

The present appeal was taken only from that part of the decree dismissing the bill as to the New Jersey corporation.

The plaintiffs, we have seen, are citizens of New York and West Virginia, while the Tennessee Copper Company is a corporation of New Jersey. But under the statutes regulating the jurisdiction of the Circuit Courts of the United States, diversity of citizenship—nothing more appearing—will not give authority to Circuit Courts of the United States to render a judgment *in personam* where, as here, neither the plaintiffs nor the defendants are inhabitants of the district in which the suit was brought, and where the defendant appears specially and objects to jurisdiction being exercised over it. The defendant corporation, not an inhabitant of the district where suit is brought, cannot be compelled against its will to submit to such jurisdiction for the purposes merely of a personal judgment. 18 Stat. 470, March 3, 1875, § 1, c. 137, as amended and corrected in 1887 and 1888; March 3, 1887, c. 373, 24 Stat. 552; August 13, 1888, c. 866, 25 Stat. 433; *Macon Grocery Co.* v. *Atlantic Coast Line,* 215 U. S. 501, 508, 510, *and authorities there cited.*

The plaintiffs insist, however, that jurisdiction can be sustained by § 8 of the act of March 3d, 1875, determining the jurisdiction of the Circuit Courts of the United States. 18 Stat. 470, c. 137. The first section of that act, as amended by the above act of 1888, 25 Stat. 433, correcting the enrollment of the act of March 3d, 1887 (24 Stat. 552, c. 373), provides that a suit founded only on the fact of the diversity of citizenship between the parties, shall be brought only in the district of the residence of either the plaintiff or the defendant. But the plaintiffs contend that that section is not to be interpreted apart from the other sections of the same act. Section 8 has relation to the first section and contains provisions that refer to an exceptional class of cases.

The two sections relate to the same general subject, and must be regarded as embodying a scheme of jurisdiction. Considered together, they mean that, if jurisdiction is founded only on diversity of citizenship, the Circuit Court may, without its process being personally served on the defendant, within its jurisdiction, exert the jurisdiction given by the eighth section in the particular cases and *for the special purposes therein specified*—its power in such cases being of course restricted as in that section prescribed. Such is the argument of the plaintiffs.

The eighth section of the act of 1875 provides: "That when in any suit commenced in any circuit court of the United States, to enforce any legal or equitable lien upon, or *claim to,* or to remove any incumbrance or lien or cloud upon the title to, real or personal property *within the district where such suit is brought,* one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks; and in case such absent defendant shall not appear, plead, answer, or demur within the time so limited, or within some further time to be allowed by the court, in its discretion, and upon proof of the service or publication of said order, and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit

in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect *only* the property which shall have been the subject of the suit *and under the jurisdiction of the court therein, within such district. . . .*"

Substantially, the contentions of plaintiffs are that the mode in which the defendant uses its real property in Tennessee, within the jurisdiction of the Circuit Court, creates a nuisance injuriously affecting their property near by in the State of Georgia; that, according to the settled principles of law, they are entitled to have the defendant corporation restrained from so using its Tennessee property as to injure their property in Georgia; and that the right to such protection, against the effects of that nuisance, as maintained by the defendant in Tennessee, should, within the fair meaning of the act of 1875, be deemed a "*claim to . . .* real property . . . within the district" where such suit is brought"—such property, it is alleged, being so used in Tennessee as to create a nuisance, causing injury to the plaintiffs' property in Georgia.

Manifestly, unless the plaintiffs can sustain this proposition and bring their case within the eighth section of the act of 1875, there is no ground whatever to maintain the jurisdiction of the Circuit Court as to the defendant corporation; certainly not, as we have said, for the purposes of a personal judgment against the defendant company, since neither the plaintiffs nor the defendant are inhabitants of the district in which the suit was brought, and the defendant corporation refuses to voluntarily appear and submit to the jurisdiction of the court.

We are of opinion that under no reasonable interpretation of the eighth section can the plaintiffs' case be held to belong to the class of exceptional cases mentioned in

that section. In no just sense can their cause of action be said to constitute "*a claim to*" real property in the district. They cannot be regarded as having a "claim to" the leased land or premises on which the alleged nuisance is maintained. It may be that what the defendant is charged with doing creates a nuisance. It may also be that the defendant company wrongfully uses and has used its property in Tennessee in such way as to seriously injure the property of plaintiffs, near by in Georgia, and that plaintiffs are legally entitled by some mode of proceeding in some court to have the alleged nuisance abated, and their property in Georgia protected in the manner asked by them. But it does not follow that they can invoke the authority of the Circuit Court of the United States for the protection of their property against the defendant's acts. The jurisdiction of the Circuit Courts is determined by acts of Congress enacted in pursuance of the Constitution. Apart from the powers that are inherent in a judicial tribunal, after such tribunal has been lawfully created, the Circuit Courts can exercise no jurisdiction not conferred upon them by legislative enactment. It is quite sufficient now to say, without discussion, that it would be a most violent construction of the eighth section of the act of 1875 to hold that the right to have abated the nuisance in question arising from the use in Tennessee of defendant's property, because of the injurious effects upon plaintiffs' real property in Georgia, creates, in the meaning of the statute, a "claim to" real property within the district where the suit is brought. There is absolutely no foundation for such a position. We do not mean to say that Congress, in cases of controversies between citizens of different States, might not so enlarge the scope of the statute regulating the jurisdiction of the Federal courts as to enable the Circuit Court, sitting in Tennessee, to suppress the nuisance in question. Upon that question

we have no occasion at this time to express an opinion. Still less do we say that the plaintiffs have not an efficient remedy in some court either against the defendant corporation, or against the several individuals who, under its sanction, or by its authority, are maintaining in Tennessee the nuisance complained of. We only mean to say—and cannot properly go further in this case—. that the statute in question does not cover this particular case, and that the United States Circuit Court, sitting in Tennessee—the New Jersey company refusing to voluntarily appear in the suit as a defendant—is without jurisdiction to give the plaintiffs, citizens of New York and West Virginia, the particular relief asked against that corporation.

The bill was properly dismissed for want of jurisdiction in the Circuit Court and the decree below is

*Affirmed.*