WILHELM et al. v. CONSOLIDATED OIL CORPORATION et al.

No. 1375.

Circuit Court of Appeals, Tenth Circuit.

June 30, 1936.

Lewis J. Bicking, of Tulsa, Okl. (C. R. Nixon and Guy Wilson, both of Tulsa, Okl., and Amidon, Hart, Porter & Hook, of Wichita, Kan., on the brief), for appellants.

Frederick H. Wood, of New York City (Summers Hardy, N. A. Gibson, and J. H. Maxey, all of Tulsa, Okl., and G. T. Stanford, Harold F. McGuire, and R. W. Ragland, all of New York City, on the brief), for appellees.

Before PHILLIPS and BRATTON, Circuit Judges, and VAUGHT, District Judge.

PHILLIPS, Circuit Judge.

This is an appeal from an order sustaining motions of the appellees, defendants below, to quash the respective personal services attempted to be made upon them and dismissing the bill of appellants, plaintiffs below.

The plaintiffs sue jointly, either as stockholders of the Prairie Oil & Gas Company, a Kansas corporation, hereinaft-

er called the "Gas Company,"[1] or as former stockholders of that Company or of the Prairie Pipe Line Company, a Kansas corporation, hereinafter called the "Pipe Company,"[1] who have surrendered their stock in such companies for stock of defendant Consolidated Oil Corporation, hereinafter called "Consolidated." The suit is brought on behalf of plaintiffs and all others similarly situated, who may become parties to the suit and contribute to the expenses thereof. No plaintiff is alleged to be a stockholder of the Pipe Company.

The plaintiffs Wilhelm are alleged to be citizens of Kansas and stockholders of the Gas Company. Plaintiff Dana is alleged to be a citizen of Oklahoma and a stockholder of the Gas Company. Plaintiffs Drohen and Bauman are alleged to be citizens of Kansas and former stockholders of the Pipe Company or of the Gas Company or both, who surrendered their stock in such companies for stock of Consolidated. Plaintiffs Jaeger and Rose are alleged to be citizens of Oklahoma and former stockholders of the Pipe Company or of the Gas Company or both, who also surrendered their stock in such companies for stock of Consolidated.

The defendants are Consolidated, a New York corporation and a citizen and resident of that state, and its subsidiaries, Sinclair-Prairie Pipe Line Company, hereinafter called "Sinclair-Pipe," Sinclair-Prairie Oil Marketing Company, hereinafter called the "Marketing Company," both Delaware corporations and citizens and residents of that state, Sinclair-Prairie Oil Company, hereinafter called "Sinclair Oil," and Sinclair Refining Company, hereinafter called the "Refining Company," both Maine corporations and citizens and residents of that state.

Although the bill seeks inter alia to set aside transfers to the defendant corporations of the assets of the Prairie Companies, both of which are existing Kansas corporations, neither of the Prairie Companies is made a party to the suit.

Plaintiffs complain of the execution and carrying out of a tri-party agreement dated January 14, 1932, between the Gas Company, the Pipe Company and Consolidated, in which contract it was mutually agreed that the three companies should unite all their assets by the Prairie Companies transferring all their assets to Consolidated, or one or more of its controlled corporations, in consideration, among other things, of the assumption by Consolidated of the liabilities of the Prairie Companies and the issuance of stock of Consolidated to be delivered directly to stockholders of the Prairie Companies.

The obligations of the Prairie Companies to transfer their assets and of Consolidated to acquire the same were interdependent and conditioned upon the simultaneous transfer to Consolidated, or to one or more of its controlled corporations, of the assets of both Prairie Companies. The tri-party agreement in question was authorized and approved by the vote of the holders of more than four-fifths of the outstanding stock of each of the Prairie Companies as required by the statutes of Kansas,[2] and by the action of their respective boards of directors.

On or about March 30, 1932, the Gas Company, pursuant to the tri-party agreement, transferred its physical properties to Sinclair Oil and to Marketing Company, and its securities, cash and accounts receivable to Consolidated; and on or about the same date the Pipe Company, pursuant to the tri-party agreement, transferred its tangible properties to Sinclair Pipe, and its securities, cash and accounts receivable to Consolidated.

---

1 Collectively, they will be referred to as the Prairie Companies.

2 Kansas Sess.Laws 1931, c. 154, § 1. (1933 Supp., Revised Statutes Kan. 1923, § 17—620a), provides:

"That any corporation now or hereafter incorporated under the laws of Kansas shall have the additional right and power to make disposition of all or substantially all of its property, assets and good will, or good will, by sale, lease, exchange or otherwise, to such person or corporation on such terms and conditions and for such considerations as its board of directors, may determine, when and as authorized or approved by the vote of the holders of not less than four-fifths in amount of its outstanding shares of capital stock entitled to vote, at a meeting duly called for the purpose in accordance with the by-laws, or, in the absence of such provision in the by-laws, then upon not less than ten days' written notice.

"Sec. 2. This act shall take effect and be in force from and after its publication in the official state paper.

"Approved February 25, 1931.

"Published in official state paper February 26, 1931."

The Pipe Company on the date of the tri-party agreement and up to the time of the conveyances made thereunder, owned and operated a pipe line system in the states of Texas, Kansas, Oklahoma, Missouri, Iowa, Indiana and Illinois, and owned other properties, cash, securities and accounts receivable. The Gas Company, on the date of such agreement, owned and operated oil and gas properties located in various states, including the state of Oklahoma; and owned cash, securities and accounts receivable, some of which had a situs in the state of Kansas.

The tri-party agreement and the conveyances made thereunder are alleged to have been fraudulent, ultra vires and illegal for the following alternative reasons:

(1) Because procured as a result of a scheme participated in, among others, by certain stockholders of Consolidated, who, by means of various unfair devices and maneuvers and misleading statements to stockholders of the Prairie Companies, succeeded in securing such requisite stockholders' approval of such agreements and transfers.

(2) Because unauthorized by the Kansas statute under which they were effected and in violation of other statutory inhibitions.

(3) Because the Kansas statute[3] under which the execution and performance of such agreement were effected "if construed to contemplate such action," is unconstitutional as to plaintiffs, who became stockholders of the Prairie Companies, or one of them, prior to the enactment of such statute, is "in violation of the Constitution of the United States of America [article 1, § 10; Amend. 14], which provides that no state shall pass any law impairing the obligation of contracts," and deprives "these plaintiffs of their property without due process of law of equal protection of the law and privileges and immunities as citizens of the United States."

The primary relief sought by all of the plaintiffs may be summarized as follows: That the tri-party agreement, the conveyances made thereunder and all other transactions had under said agreement be "adjudged and decreed to be ultra vires, unfair, unlawful and void, and that said agreement, transfers and conveyances be set aside, held at naught and annulled as a cloud upon the title"; that the defendants be enjoined from claiming any interest in the properties transferred by the Pipe Company and the Gas Company "in the State of Oklahoma, and elsewhere subject to the jurisdiction of this court, and that the court decree and establish that said properties are the properties and assets of the stockholders of the two former Prairie Companies"; that said deeds, conveyances and transfers be delivered up and canceled; and that a receiver be appointed to take possession of said properties and the income received by the defendants therefrom, and "hold and operate the same under the jurisdiction of this court for the use and benefit of these plaintiffs and the other stockholders and creditors of said two Prairie Companies, until ordered liquidated and distributed under decree of this Court."

As to those plaintiffs who have exchanged their stock in the Prairie Companies and are now stockholders of Consolidated, the bill prays for a rescission of such exchange and for a decree permitting said plaintiffs to "stand in relation to their stock in the same position as prior to the said exchange."

The bill prays, in the alternative, for a decree nisi, to wit, that "if the court finds it to be equitable and proper" that it "issue its order whereby said defendants may void the relief herein prayed for by within a reasonably short period of time, paying to these plaintiffs and other stockholders similarly situated who join herein the real, fair and intrinsic value of their stock in the said two Prairie Companies * * * or their proportionate share of the value of all the property," of the Prairie Companies. Incidental to such decree nisi, the bill prays for discovery and accounting, the declaration of a trust in the properties transferred by the Prairie Companies and profits therefrom, and for the entry of a decree that plaintiffs have a lien on said properties in furtherance of such nisi decree.

 Consolidated moved to quash the personal service attempted to be had upon it upon the ground, inter alia, that it is not doing business and was not found within the Northern District of Oklahoma. The issue presented was determined upon affidavits submitted by Consolidated in support of its motion, counter affidavits submitted

3 Section 17—620a, supra, set out in note 2.

by the plaintiffs, and reply affidavits by Consolidated.

· The Consolidated, a New York corporation, has never applied ·for a license to do business in the state of Oklahoma, and has never itself maintained an office for the transaction of business or transacted business in Oklahoma. Dana H. Kelsey, the person upon whom a subpœna was served, although a director of Consolidated, is not an officer or agent thereof, has never been authorized to accept service of process on its behalf, or to transact business on its behalf in Oklahoma, and has never done so. The Consolidated is exclusively a holding company having its only office in the state of New York and transacting business only in that state; its income is derived solely from dividends and interest; it has never held or owned any physical properties in Oklahoma or elsewhere, and although it owns all the stock of the defendant ·subsidiaries operating in Oklahoma, the "corporate entity of the parent company, and that of each subsidiary has been scrupulously maintained," and "the separation between the Consolidated and its subsidiaries is not only formal, but real and substantial."

It is well settled by the decisions of the Supreme Court, that a foreign corporation, not itself engaged in business within the District in which suit is instituted against it, is not "present" therein because a subsidiary is doing business therein, so long as there is a real, even though it be a formal, separation between parent and subsidiary.[4] It follows that the court acquired no jurisdiction over the person of Consolidated.

The remaining defendants moved to quash the personal services attempted to be made upon them respectively upon the ground that the venue of the action was improperly laid in the Northern District of Oklahoma. Consolidated's motion included the same ground. The trial court held that the action was governed by section 51 of the Judicial Code (28 U.S.C.A. . § 112) and hence the venue was improperly laid.

· Section 51 of the Judicial Code regulates generally the venue in which suits instituted in the District Courts must be laid.

In so far as material here section 51 provides: " * * * (a) * * * Except as provided in sections 113 to 118 of this title, no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded *only* on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." (Italics ours.)

■ Under section 51 a defendant generally may be proceeded against only in the district of which he is an inhabitant. It is only "where the jurisdiction is founded only on the fact that the action is between citizens of different States" that it may be brought in the district of the residence of either the plaintiff or the defendant.

■ The provision authorizing suits, where the jurisdiction is founded on diversity of citizenship, to be brought in the residence of either the plaintiff or the defendant has two limitations:

(1) If brought in the district of the residence of a plaintiff, all the plaintiffs must be residents of the district in which the suit is brought.[5]

(2) Jurisdiction of the suit must be founded solely on diversity of citizenship.[6]

---

[4] Conley v. Mathieson Alkali Works, 190 U.S. 406, 23 S.Ct. 728, 47 L.Ed. 1113; Geer v. Mathieson Alkali Works, 190 U. S. 428, 23 S.Ct. 807, 47 L.Ed. 1122; Peterson v. Chicago, R. I. & Pac. Ry. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Consolidated Textile Corp. v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047.

[5] It is well settled that a suit brought in a district of the residence of a plaintiff is laid in the wrong venue, unless all the plaintiffs are residents of such district, although ·jurisdiction in the suit is based solely on diversity of citizenship. Straw-·

bridge v. Curtiss, 3 Cranch. 267, 2 L.Ed. 435; Smith v. Lyon, 133 U.S. 315, 317, 10 S.Ct. 303, 33 L.Ed. 635; Hooe v. Jamieson, 166 U.S. 395, 397, 17 S.Ct. 596, 41 L.Ed. 1049; Greeley v. Lowe, 155 U.S. ·58, 68, 15 S.Ct. 24, 39 L.Ed. 69.

[6] Macon Grocery Co. v. Atlantic Coast Line R. Co., 215 U.S. 501, 30 S.Ct. 184, 54 L.Ed. 300; Male v. Atchison, T. & S. F. Ry. Co., 240 U.S. 97, 101, 36 S.Ct. 351, 60 L.Ed. 544; City of Memphis v. Board of Directors of S. F. L. District (D.C. W.D.Tenn.) 228 F. 802; Cound v. Atchison, T. & S. F. Ry. Co. (C.C.W.D.Tex.) 173 F. 527; Whittaker v. Illinois C. R. Co. (C.C.E.D.La.) 176 F. 130; Bacon v. ·

This suit was not brought at the residence of any of the defendants, all of which are foreign corporations. A part of the plaintiffs are residents of the district and others of the State of Kansas.

The bill seeks relief on three alternative grounds:

(a) Fraud;

(b) That the Kansas statute under which the tri-party agreement, conveyances and transfers sought to be set aside, were made, is not applicable; and

(c) That if such statute be applicable, it is invalid as applied to stockholders of pre-existing corporations acquiring their stock prior to its passage because in violation of the provision of the Federal Constitution (article 1, § 10; Amend. 14) prohibiting any state from impairing the obligation of contracts and because it deprives the plaintiffs of their property without due process of law.

Thus it will be seen that the bill challenges the validity of the Kansas statute on the ground it violates the Federal Constitution, seeks relief predicated on that ground and presents a substantial federal question.[7]

■ Plaintiffs, at the hearing of the motion, obtained leave to strike out the allegations of the bill raising the federal question. But the chancery subpoenas having issued under the amended bill setting up such federal question, the withdrawal of the federal question from the case could not validate the services where the venue was improper at the time they were made. See Brown v. Pond (D.C.N.Y.) 5 F. 31, and Bull v. Chicago, M. & St. P. Ry. Co. (D.C.Wash.) 6 F.(2d) 329.

Since the jurisdiction is not based solely on diversity of citizenships and all the plaintiffs do not reside in the district of suit, it follows, if section 51 is applicable to the suit, that it was not brought in the proper venue.

The plaintiffs, however, contend that this suit falls within section 57 (28 U.S.C.A. § 118) and hence its venue was properly laid in the Northern District of Oklahoma.

Section 57 of the Judicial Code (28 U.S.C.A. § 118) in so far as here material provides:

"When in any suit commenced in any district court of the United States to *enforce* any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property *within the district where such suit is brought,* one or more of the defendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found * * *; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks. In case such absent defendant shall not appear, plead, answer, or demur * * * it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; *but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district;* and when a part of the said real or personal property *against* which such proceedings shall be taken shall be within another district, but within the same State, such suit may be brought in either district in said State. * * *" (Italics ours.)

■ Section 57 provides for constructive service of process by service or publication of a warning order and hence cannot apply to actions in personam where jurisdiction over the person of the defendant is essential.[8] It is restricted to suits in rem or quasi in rem "to enforce any legal or equitable lien upon or claim

Federal Reserve Bank of San Francisco (D.C.Wash.) 289 F. 513, 519.

[7] Mosher v. City of Phœnix, 287 U.S. 29, 31, 32, 53 S.Ct. 67, 77 L.Ed. 148; Chicago, G. W. Ry. Co. v. Kendall, 266 U.S. 94, 97, 45 S.Ct. 55, 69 L.Ed. 183.

[8] Kansas Gas & E. Co. v. Wichita Natural G. Co. (C.C.A. 8) 266 F. 614, 617; Jones v. Gould (C.C.Ohio) 141 F. 698; Id. (C.C.A. 6) 149 F. 153; Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565.

to, or to remove any incumbrance or lien or cloud upon the title to real or personal property" located within the district of suit or partly within that district and partly within another district "within the same state." [9]

. The presence of the property, real or personal, within the district of suit is essential to the exercise of the limited jurisdiction conferred by section 57. Critchton v. Wingfield, 258 U.S. 66, 74, 42 S.Ct. 229, 66 L.Ed. 467; Chase v. Wetzlar, 225 U.S. 79, 86, 32 S.Ct. 659, 56 L.Ed. 990.

■ Unless a defendant is personally served in the district or personally appears, the decree may only affect the property over which the court has jurisdiction. Grable v. Killits (C.C.A.6) 282 F. 185, 197; Dutton v. First Nat. Bank of Waycross (D.C.Fla.) 244 F. 236, 238.

■ The plaintiffs who are now stockholders of Consolidated seek to rescind the exchange of their stock in the Pipe Company or in the Gas Company, or both, made in accordance with the terms of the tri-party agreement as an essential prerequisite to the granting to them of the other relief sought.[10] The remedy

of rescission is within the exclusive jurisdiction of equity.[11] Equity acts in personam.[12] A suit for rescission is a suit in personam and not in rem.[13] Hence as to such plaintiffs this suit is clearly one in personam.

■ But the primary relief sought by all the plaintiffs is the rescission and cancellation of the tri-party agreement and the conveyances and transfers made pursuant thereto. Such relief is a prerequisite to the granting of the other relief sought by the bill;[14] and such other relief is dependent thereon and incidental thereto. See Maya Corporation v. Smith (D.C.Del.) 32 F.(2d) 350, 352.

In so far as the suit is one to set aside the tri-party agreement, it is clearly in personam, being the equivalent of a suit for rescission upon the ground of fraud. In so far as it seeks to have the conveyances and transfers made thereunder cancelled and delivered up, and to declare the title to be in the plaintiffs, it is equally in personam. The court "has no inherent power, by the mere force of its decree, to annul a deed, or to establish a title."[15]

---

[9] General Inv. Co. v. Lake S. & M. S. Ry. Co., 260 U.S. 261, 279–281, 43 S.Ct. 106, 67 L.Ed. 244; Kansas Gas & E. Co. v. Wichita Nat. Gas Co. (C.C.A. 8) 266 F. 614, 617; Ladew v. Tennessee Copper Co. (C.C.Tenn.) 179 F. 245, 250; Id., 218 U.S. 357, 31 S.Ct. 81, 54 L.Ed. 1069; Pensacola State Bank v. Thornberry (C. C.A. 6) 226 F. 611, 617; Eldred v. American Palace-Car Co. (C.C.N.J.) 103 F. 209, 211–212; Commercial Credit Co. v. Continental Trust Co. (C.C.A. 5) 295 F. 615, 619; Gilmore v. Robillard (C.C.A. 9) 44 F.(2d) 295, 296.

[10] See Greer Inv. Co. v. Booth (C.C.A. 10) 62 F.(2d) 321, 324; Maya Corporation v. Smith (D.C.Del.) 32 F.(2d) 350, 352.

[11] Pomeroy's Eq. Jur. 4th Ed. Vol. 1, § 171, p. 214, Id. § 188, p. 257; Louisville, N. A. & C. R. Co. v. Louisville Trust Company, 174 U.S. 552, 567, 19 S.Ct. 817, 43 L.Ed. 1081; Twogood v. Allee, 125 Iowa, 59, 99 N.W. 288, 289; Baltimore Sugar Refining Co. v. Campbell & Zell Co., 83 Md. 36, 34 A. 369, 373; Nathan v. Nathan, 166 Mass. 294, 44 N.E. 221, 222; Jones v. Bolles, 9 Wall. 364, 369, 19 L.Ed. 734; Baltimore H. I. Soc. v. Marley, 156 Md. 478, 144 A. 521, 522.

[12] Massie v. Watts, 6 Cranch, 148, 159, 3 L.Ed. 181; Hart v. Sansom, 110 U.S. 151, 154, 155, 3 S.Ct. 586, 28 L.Ed. 101. See,

however, Arndt v. Griggs, 134 U.S. 316, 320, 321, 10 S.Ct. 557, 33 L.Ed. 918.

[13] Hart v. Sansom, supra, 110 U.S. 151, at pages 154, 155, 3 S.Ct. 586, 28 L.Ed. 101; Lamkin v. Lovell, 176 Ala. 334, 58 So. 258, 260; City of Dallas v. Wright, 120 Tex. 190, 36 S.W.(2d) 973, 976, 77 A.L.R. 709.

[14] Except the rescission of the exchange of stock sought by certain plaintiffs.

[15] In Hart v. Sansom, 110 U.S. 151, 3 S.Ct. 586, 588, 28 L.Ed. 101, the court said:

"Generally, if not universally, equity jurisdiction is exercised in personam, and not in rem, and depends upon the control of the court over the parties, by reason of their presence or residence, and not upon the place where the land lies in regard to which relief is sought. Upon a bill for the removal of a cloud upon title, as upon a bill for the specific performance of an agreement to convey, the decree, unless otherwise expressly provided by statute, is clearly not a judgment in rem, establishing a title in land, but operates in personam only, by restraining the defendant from asserting his claim, and directing him to deliver up his deed to be canceled; or to execute a relief to the plaintiff. Langd.Eq.Pl.(2d Ed.) §§ 43, 184; Massie v. Watts, 6 Cranch, 148 [3 L.Ed. 181]; Orton v. Smith, 18 How. 263 [15

There is another reason why a decree granting the primary relief must be had in a suit in personam. Section 57 itself provides that an adjudication thereunder shall *"affect only the property which shall have been the subject of the suit and under the jurisdiction óf the court* therein, within such district." This has been treated as a substantive limitation upon the jurisdiction conferred, as well as a direction as to the character of the decree. Ladew v. Tennessee Copper Co., 218 U.S. 357, 31 S.Ct. 81, 54 L.Ed. 1069; General Investment Company v. Lake Shore & M. S. Ry. Co., 260 U.S. 261, 280, 281, 43 S.Ct. 106, 67 L.Ed. 244. See, also, Chase v. Wetzlar, 225 U.S. 79, 86, 32 S.Ct. 659, 56 L.Ed. 990; Critchton v. Wingfield, 258 U.S. 66, 74, 42 S.Ct. 229, 66 L.Ed. 467.

The tri-party agreement provided for the union of all the properties of the Consolidated and Prairie Companies wherever situated. Part of the properties of the Prairie Companies affected by the tri-party agreement, and conveyed and transferred to Consolidated pursuant thereto, are located within the district of suit and other districts in Oklahoma; and part of them are located without the state of Oklahoma and beyond the jurisdiction of the court of the district of suit. Hence the decree to be effective must of necessity operate on the person of the defendants and not the properties involved. While a suit may be maintained under section 57 to set aside a conveyance of property, all of which is located in the district of suit, or partly in that district and partly in another district in the same state,[16] such a suit may not be maintained under section 57, where part of the property lies beyond the state of the district of suit.[17]

Should the relief be limited to the properties in Oklahoma, the decree would amount to only a partial rescission of an indivisible contract affecting properties both within and without the state. The tri-party agreement is not only indivisible, but the considerations were mutually interdependent. Consolidated was under no obligation to acquire any of the properties of either of the Prairie Companies unless all of the properties of both were conveyed. The purpose of the tri-party agreement was to unite all of the prop-

---

L.Ed. 393]; Vandever v. Freeman, 20 Tex. [333] 334 [70 Am.Dec. 391].

"It would doubtless be within the power of the state in which the land lies to provide by statute that if the defendant is not found within the jurisdiction, or refuses to make or to cancel a deed, this should be done in his behalf by a trustee appointed by the court for that purpose. Felch v. Hooper, 119 Mass. 52; Ager v. Murray, 105 U.S. 126, 132 [26 L.Ed. 942]. But in such a case, as in the ordinary exercise of its jurisdiction, a court of equity acts in personam, by compelling a deed to be executed or canceled by or in behalf of the party. It has no inherent power, by the mere force of its decree, to annul a deed or to establish a title. * *

"Such a decree, being in personam merely, can only be supported against a person who is not a citizen or resident of the state in which it is rendered, by actual service upon him within its jurisdiction; and constructive service by publication in a newspaper is not sufficient. The courts of the state might perhaps feel bound to give effect to the service made as directed by its statutes. But no court deriving its authority from another government will recognize a merely constructive service as bringing the person within the jurisdiction of the court."

See, however, Arndt v. Griggs, 134 U.S. 316, 320, 10 S.Ct. 557, 33 L.Ed. 918.

16 Citizens' Savings & Trust Co. v. Illinois Central R. Co., 205 U.S. 46, 27 S.Ct. 425, 429, 51 L.Ed. 703. McRoberts v. Independent Coal & Coke Co. (C.C.A. 8) 15 F.(2d) 157.

In Citizens' Savings & Trust Co. v. R. Co., supra, the court said:

"These decisions, we think, make it clear that this suit comes within the act of 1875, as one to remove an encumbrance or cloud upon the title to real property within the eastern district of Illinois. The railroad in question *is wholly within that district."*

It emphasized the fact that the property involved was located wholly in the district of suit by the use of italics.

17 General Investment Co. v. Lake Shore & M. S. Ry. Co., 260 U.S. 261, 280, 43 S.Ct. 106, 114, 67 L.Ed. 244. See, also, O'Neil v. Birdseye (D.C.N.Y.) 244 F. 254; Eldred v. American Palace-Car Company (C.C.A. 3) 105 F. 455. In General Investment Co. v. Ry. Co., supra, the court referring to section 57, said:

"This section is in terms restricted to suits 'to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property' *located within the district of suit or partly within that district and partly within another district* 'within the same state.'" (Italics ours.)

erties of the three companies and their subsidiaries into a single business enterprise, and the stockholders of the three companies were to compose the stockholders of the enlarged Consolidated. The effect of a decree setting the tri-party agreement aside as to the properties in Oklahoma, therefore, would not be limited to those properties but would affect properties of all three companies lying outside that state, which were intended to be united in common ownership, and would affect the rights of all stockholders of Consolidated—the stock of which was exchanged for properties of the Prairie Companies—both those who were stockholders of Consolidated at the time the agreement was executed and those who have become so since through the exchange of their Prairie stock for Consolidated stock. Furthermore, an indivisible contract will only be rescinded in its entirety. Gatling v. Newell, 9 Ind. 572; Neal v. Reynolds, 38 Kan. 432, 16 P. 785; Jeffers v. Forbes, 28 Kan. 174.

It follows that such primary relief may be had only in a suit where the court has acquired jurisdiction over the person of the parties to such agreement, conveyances and transfers. Here no jurisdiction of the person of Consolidated has been obtained and the Prairie Companies are not parties to the suit.

This is not a suit to remove a cloud from the title to the properties of the Prairie Companies affected by, and conveyed and transferred pursuant to the tri-party agreement, for the simple reason that it is brought by the stockholders of the Prairie Companies in their own right, and not by such companies, nor by stockholders thereof as a derivative suit. Such properties belonged to the Prairie Companies not to their stockholders.[18]

The Prairie Companies have not been dissolved. If such agreement, conveyances and transfers were wrongful, the direct injury was to the corporations and their properties. The right of action for such an injury is in the corporation and not in its stockholders;[19] and suit thereon must be brought by the corporation or by a stockholder as a derivative suit. This suit is not brought by the Prairie Companies or by their stockholders as a derivative suit. The bill does not seek restoration to the Prairie Companies of the property conveyed and transferred but seeks recovery thereof to the stockholders of such companies. It seeks relief solely in behalf of the stockholders in their own right and not in behalf of the Prairie Companies as a derivative right. No demand upon and refusal by the Prairie Companies to bring the suit, nor facts excusing such demand and refusal are alleged. The Prairie Companies would be necessary parties to a derivative suit and they are not joined.[20] Moreover, the properties being located partly outside of the state of Oklahoma, such a suit could not be brought under section 57.

[20] This is not a suit to enforce a legal or equitable lien upon the properties affected by the tri-party agreement and con-

---

[18] Gibbons v. Mahon, 136 U.S. 549, 557, 10 S.Ct. 1057, 1058, 34 L.Ed. 525; Wabash Ry. Co. v. American Refrigerator T. Co. (C.C.A. 8) 7 F.(2d) 335, 342; Steinfeld v. Copper State M. Co., 37 Ariz. 151, 290 P. 155, 160; Childress v. Hinch, 162 Okl. 296, 20 P.(2d) 571; Wollenberger v. Hoover, 346 Ill. 511, 179 N.E. 42, 68.

In Gibbons v. Mahon, supra, the court said:

"The distinction between the title of a corporation, and the interest of its members or stockholders in the property of the corporation is familiar and well settled. The ownership of that property is in the corporation, and not in the holders of shares of its stock. The interest of each stockholder consists in the right to a proportionate part of the profits whenever dividends are declared by the corporation, during its existence under its charter, and to a like proportion of the prop-

erty remaining, upon the termination or dissolution of the corporation, after payment of its debts."

[19] Davenport v. Dows, 85 U.S. (18 Wall.) 626, 627, 21 L.Ed. 938; Hutchinson Box Board & P. Company v. Van Horn (C.C.A. 8) 299 F. 424, 428; Boatright v. Steinite Radio Corp. (C.C.A. 10) 46 F.(2d) 385, 388; Huffman v. Ellen Mining Co., 118 Wash. 546, 204 P. 197, 199; Smith v. Lewis, 211 Cal. 294, 295 P. 37, 39.

[20] Davenport v. Dows, supra; Swan Land & Cattle Co. v. Frank, 148 U.S. 603, 610, 611, 13 S.Ct. 691, 37 L.Ed. 577; Eldred v. American Palace-Car Co. (C.C.A. 3) 105 F. 457–459; Busch v. Mary A. Riddle Co. (D.C.Del.) 283 F. 443, 444; Baltimore & Ohio R. Co. v. Parkersburg, 268 U.S. 35, 38, 45 S.Ct. 382, 69 L.Ed. 834; Fletcher Cyc. Corporations (Permanent Ed.) § 5997.

veyed and transferred pursuant thereto, except as relief incidental to and dependent on primary relief, namely the cancellation of such agreement, conveyances and transfers, which can only be obtained under the circumstances of this case by a decree in personam.

We therefore conclude that this suit does not fall within the purview of section 57 and the venue was improperly laid in the Northern District of Oklahoma.

The order is affirmed.