66 F.Supp. 117 (1946)
BROOKLYN NAT. LEAGUE BASEBALL CLUB, Inc.,
v.
PASQUEL et al.
No. 4553.
District Court, E. D. Missouri, E. D.
May 31, 1946.
*118 J. M. Lashly, of St. Louis, Mo., for complainant.
Thomas F. McDonald and Raymond F. McNally, Jr., both of St. Louis, Mo., for respondent Ray J. Gillespie.
Bryan, Cave, McPheeters & McRoberts and Thomas S. McPheeters, all of St. Louis, Mo., for respondents Bernardo Pasquel and Mario Loussac (also known as Mario Loustau).
HULEN, District Judge.
On complaint charging defendants with conspiracy to induce professional baseball players under contract with plaintiff to breach their contracts and go to Mexico to play professional baseball, temporary restraining order was granted. The case is now before the Court on application for temporary injunction. Summons was served on Ray J. Gillespie only. Notice with copy of complaint, restraining order, and date of hearing on application for temporary injunction, was served in New York, on Bernardo Pasquel, individually and as officer of Mexican League and Pasquel Brothers, a corporation, and on Mario Loussac. Like notice was given to Jorge Pasquel through his attorneys in New York. James was not served. The case against Gillespie will be considered first.
Gillespie, now employed by the St. Louis Star-Times, has been a sports writer for twenty-seven years. The Pasquels, engaged in promoting organized baseball in Mexico, have called on Gillespie for services, including securing baseball equipment and hotel reservations and interviewing ball players and umpires. Of the ball players interviewed, only "Mickey" Owen was in organized baseball. Plaintiff charges it had Owen under contract when he was induced to go to Mexico. In the Spring of 1946 Owen was sent to Gillespie in the Star-Times office in St. Louis. There he received a bonus for signing contract to play ball in Mexico for the Pasquels, and signed the contract. He was interviewed and had a picture taken of himself and his bonus check, for publication by Gillespie. Gillespie signed the contract for the Pasquels. Terms of the contract were agreed upon by Owen with the Pasquels before Owen saw Gillespie. Before Gillespie signed the contract, Owen repeatedly assured him that he was not under contract to plaintiff. Gillespie also figures in the approach made to one Reiser, a contract player of plaintiff. Reiser was interviewed in New York by representatives of Pasquel Brothers. They attempted there to induce him to break his contract and play ball in Mexico. Pasquel told Reiser to contact Gillespie on arrival in St. Louis. Gillespie received a telephone request about this time to, and he did, make hotel reservations in St. Louis for representatives of Pasquel Brothers. Reiser never did contact Gillespie. Gillespie stated he knew nothing about Reiser being referred to him. He testified his interest in associating with Pasquel Brothers was their promise to give him exclusive *119 stories on players signed. He denied being party to a conspiracy, purpose or knowledge of inducing players to violate contracts with organized baseball. Exclusive stories on conflict between Mexican and United States organized baseball, resulting from players going from the latter to the former, were of value to Gillespie. They raised his prestige as a reporter and his hopes for a bonus from the Star-Times. He denied any other consideration or purpose.
A showing was made that Pasquel Brothers or their representatives have induced and attempted to induce ball players to go to Mexico in violation of their contracts with plaintiff. Plaintiff asserts Gillespie is a party to such activity, that such conduct constitutes a conspiracy, and Gillespie is responsible for all acts of the conspirators, as agent of the Pasquel Brothers.
Gillespie was agent for Pasquel Brothers. His agency was not general, but limited to specific purposes. His agency was not an unlawful one to further the conspiracy charged. He received specific instructions for each of his acts. The record is barren that he ever knowingly contacted a player under contract or of facts from which such knowledge could be imputed. Owen assured Gillespie he was not under contract. Plaintiff argues, "These experienced sports reporters would not have been so naive as to accept Owen's version of his freedom to contract without question," and "It seems hardly possible that a sports writer of such experience (as Gillespie's) would ignore the baseball rules of the Major League concerning players in military service, and that he would be without knowledge of the clauses of their baseball contract, which are all uniform contracts, as it appears from their face, and as is required by Major League Rule 3(c) * * *." As a witness, Gillespie impressed the Court as fair, frank, informative, and honest. On his uncontradicted testimony that he did not know Owen was under contract, we will not presume the converse. Having been assured by Owen he was not under contract, there was no obligation on Gillespie to seek confirmation of Owen's statement. We do not recall Gillespie was examined on the subject of Major League Rules concerning players in military service. That subject appears in the record for the first time at the adjourned hearing on the motion for preliminary injunction.
As to the Reiser incident, we cannot base a finding of agency to engage in unlawful conspiracy on statement of representatives of Pasquels to Reiser that he should see Gillespie on arrival in St. Louis, absent evidence Gillespie authorized, knew about, or approved of such instructions. Or that Gillespie made hotel reservations for representatives of Pasquels in St. Louis at the time of Reiser's trip to St. Louis with plaintiff's ball team. These isolated circumstances stand alone as substantive facts to show Gillespie's connection with the activity of Pasquels. In our judgment they fail. We are aware that a conspiracy may be and usually is proven by circumstantial evidence. But such evidence must be consistent with the guilt of accused. Here the evidence is as consistent with Gillespie's alleged sole purpose of prosecuting his business of gathering news, as with being engaged in a conspiracy to cause plaintiff's players to breach their contracts. Inspired by zeal for a "scoop," Gillespie aggressively pressed his opportunities. He was willing to pay a consideration for information by performing favors for the Pasquels. In doing so, he subjected himself to suspicion of being a party to the Pasquels' campaign or conspiracy. Suspicion will not sustain a judgment. Assume the converse of our conclusion  the issuance of temporary injunction against Gillespie. Being based upon acts shown, of necessity it would include restraining repetition of such acts. None of Gillespie's acts are subject to restraint by Court order if he is not a party to the conspiracy charged and they were prosecuted solely to secure news. There is no proof they were prosecuted for any other purpose. The action will be dismissed as to Gillespie.
We pass to the remaining defendants. We find they are engaged in endeavoring and have endeavored to induce players to breach their contracts with plaintiff and play baseball for the Pasquels in Mexico. Legality of plaintiff's player contracts is not challenged. The verified complaint *120 and affidavits constitute a form of proof on hearing for preliminary injunction.[1] Injunctive relief is available to restrain such acts.[2]
Jurisdiction of the Court on the service had on non-resident defendants has been challenged by "Motion to Quash Summons" filed by Bernardo Pasquel and Mario Loussac. The authorities are not uniform on jurisdiction of the Court to issue a preliminary injunction against non-resident defendants who were neither served within the jurisdictional confines of the District Court issuing the order or who have not entered their appearance. See Annotations, 69 A.L.R. 1038. Plaintiff's brief indicates it bases claim to jurisdiction of the Court over the non-resident defendants on service on Gillespie. ("According to the authorities quoted above, there can be no doubt that service upon an agent is sufficient notice for his principal concerning an application for a preliminary injunction." Plaintiff's brief, p. 15.) Authorities support plaintiff's position, but plaintiff now finds itself without a case against the resident defendant. Its position is a non-resident plaintiff seeking a preliminary injunction against non-resident defendants, neither of whom have been served in the District or entered their appearance. The Circuit Court for the Fifth Circuit had a like situation before it in Eighth Regional War Labor Board et al. v. Humble Oil & Refining Co., 145 F.2d 462, 464, and ruled:
"In a civil suit in personam, jurisdiction over the defendant implies either voluntary appearance by him or effective service of process upon him; and under the general provisions of law a United States District Court may not subject a defendant in a civil suit to its jurisdiction in personam except by service within the district. As we understand the appellee, it attempts to evade the force of this rule on two grounds. It first contends that, since the appeal is from an order granting a temporary injunction, and the merits of the case have not been decided, the only issue before the court is whether the lower court abused its discretion in granting the preliminary injunction. It is true that the nature of the appeal precludes a decision on the merits here, but the question of jurisdiction is always vital. A court must have jurisdiction as a prerequisite to the exercise of discretion. The question whether a court has abused its discretion necessarily involves the question whether a court has any discretion to abuse." Certiorari denied 325 U.S. 883, 65 S.Ct. 1577, 89 L.Ed. 1998.
See also Robertson v. Railroad Labor Board, 268 U.S. 619; 45 S.Ct. 621, 69 L.Ed. 1119; Ladew et al. v. Tennessee Copper Company, 218 U.S. 357, 31 S.Ct. 81, 54 L.Ed. 1069; 28 Am.Jur., Injunctions, sec. 243, 255; 43 C.J.S., Injunctions, § 168, p. 793; Guaranty Trust Co. v. Fentress, 7 Cir., 61 F.2d 329; Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 38 S.Ct. 65, 62 L.Ed. 460, L.R.A.1918C, 497, Ann.Cas. 1918B, 461; Clarke v. Boysen, 10 Cir., 39 F.2d 800.
Plaintiff cites cases holding that a preliminary injunction may be issued either with or without notice, Franz v. Franz et al., 8 Cir., 15 F.2d 797, at page 799, and Rule 65(a) Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. There is nothing in Rule 65(a) which *121 bears on the question of jurisdiction if "the notice" is not served in the District of the Court. The Franz case involved an injunction on ancillary proceeding to protect the Court's jurisdiction in a pending proceeding in rem. The ruling in that case must be interpreted in the light of the facts. When so considered, it conforms to the general rule.
We conclude that the weight of authority supports the conclusion that the preliminary injunction here sought is an action in personam and the defendants being non-residents and not served within the District and not having entered their appearance, this Court is without jurisdiction to enter the order sought against them. As to such defendants the action will be dismissed without prejudice.
Order in accordance may be presented.
NOTES
[1] Table Supply Stores, Inc., v. Hawking et al., D.C.Fla.1935, 9 F.Supp. 888, 889; Northwestern Stevedoring Company et al. v. Marshall, Deputy Commissioner et al., 9 Cir., 1930, 41 F.2d 28, 29; Caron Corporation v. Maison Jeurelle-Seventeen, Inc., et al., D.C.N.Y.1938, 26 F. Supp. 560, 562; Royal Brewing Co. v. Missouri, K. & T. R. Co., D.C.Kan.1914, 217 F. 146, 147; McNee v. Wall et al., D.C.Fla.1935, 13 F.Supp. 326, 327, affirmed, 5 Cir., 1937, 87 F.2d 768.
[2] 43 C.J.S., Injunctions, § 89, subsec. a, page 597; American Malting Company v. Keitel, 2 Cir., 1913, 209 F. 351, 358; Bausch & Lomb Optical Co. v. Wahlgren, D.C.Ill.1932, 1 F.S. 799, 801, affirmed, 7 Cir., 68 F.2d 660, certiorari denied 292 U.S. 639, 54 S.Ct. 774, 78 L.Ed. 1491, rehearing denied 292 U.S. 615, 54 S.Ct. 862, 78 L. Ed. 1491; Meyer v. Washington Times Company, 1935, 64 App.D.C. 218, 76 F.2d 988, certiorari denied 295 U.S. 734, 65 S.Ct. 646, 79 L.Ed. 1682; Hamilton-Brown Shoe Co. v. Saxey et al., 1895, 131 Mo. 212, 32 S.W. 1106; Little Rock Surgical Co. v. Bowers et al., Kansas City 1931, 227 Mo.App. 744, 42 S.W.2d 367; Nokol Company v. Becker et al., En Banc 1927, 318 Mo. 292, 300 S.W. 1108.